[Civ. No. 6636.   Third Dist.   Mar. 6, 1942.]

MME. FERRAN et al., Appellants, v. CITY OF PALO ALTO (a Municipal Corporation) et al., Respondents.

Henderson & Henderson for Appellants.

Arnold Rumwell, City Attorney, for Respondents.

COMSTOCK, J. pro tem.—Plaintiffs prosecute this appeal from a judgment in favor of defendants in an action for an injunction seeking to restrain the defendants from enforcing an ordinance of the city of Palo Alto requiring the payment of license fees in connection with the conduct of a laundry business.

It was stipulated that all of the allegations in the First Amended Complaint are true, except the allegation that the ordinance in question is illegal and void.

The plaintiffs are copartners engaged in the laundry business. The plant where their washing and ironing are done is located in the city and county of San Francisco. They have

customers in various localities in the San Francisco Bay area, including San Francisco, San Mateo and Santa Clara Counties and the city of Palo Alto. Motor vehicles are operated by plaintiffs throughout these localities for the purpose of picking up articles to be laundered, transporting them to the plant in San Francisco, where they are washed and ironed, and then returning them to the customers. Plaintiffs have thirty-five employees at their establishment where the laundering is done. They do a gross annual business of about $900 in Palo Alto and about $60,000 in other localities, including San Francisco.

Appellants contend that the ordinance is beyond the power of the city to enact or enforce and is unequal, unfair, unreasonable, discriminatory, unconstitutional and void.

The provisions under attack are section 215, subsection "c," of Codified Ordinance No. 3 of defendant city, as amended, section 678 of said ordinance, as amended, and section 684 thereof, as amended. The first-mentioned provides that any person, firm or corporation, engaged in the laundry business in the city of Palo Alto, or taking orders for laundering, or washing of any article of clothing, linens, napery, blankets, bed clothing, or fabrics of any kind whatsoever, to be laundered or washed, for hire, whether said work is to be done within or without the limits of the city of Palo Alto, shall pay a license fee to be calculated upon a basis of the number of employees at the plant or place of laundering. Where the number of such employees is four or less, the license fee is $15 per quarter, where more than four and less than fifteen, $30 per quarter, and where fifteen or more, $45 per quarter. The second requires any such persons engaging in such business in said city to first obtain a permit from the Board of Public Safety of said city and that no license or permit therefor shall be issued by said board until the plant or place of laundering and the employees engaged therein shall have been inspected by the Health Officer of said city, or his duly authorized representative, under the rules and regulations of the Board of Public Safety, and the sanitary character of the plant and the absence of contagious or infectious disease among its agents or employees shall be certified to by him; provided, that if such laundry establishment is situated outside of the city of Palo Alto, the Health Officer, in lieu of such inspection "may accept a certificate" from the Board of Health, Health Officer or other health authority of the city or town where such establishment is located, certifying to such health conditions. Where the plant is situated in Palo Alto,

such inspections are required to be made without charge. Said section 684 provides that whenever any laundry seeking to do business within the city of Palo Alto is located without the city limits of said city ''and is unable from any cause to produce a satisfactory certificate from the health authority'' in the town or city where it is located, certifying to the health conditions at such establishment, it may, before a permit is granted, be required to submit to an inspection by the Health Officer of the City of Palo Alto, for the making of which he shall charge mileage at the rate of 15c per mile for each mile actually traveled by him from his office in the city of Palo Alto to the place where inspection is made, and return therefrom, and in addition is required to charge a fee for such inspection at the rate of $2.50 per hour for each hour actually spent in making such inspection, from the time of his departure from his office in the city of Palo Alto until the time of his return thereto; provided, that where two or more laundries are inspected on the same trip, the time occupied in traveling to and from such establishments ''may be pro-rated and charged proportionately to such establishments.''

There is no serious disagreement between the parties as to the principles underlying the doctrine of equal protection and uniform application of the law. These principles have been exhaustively dealt with in numerous decisions of our supreme and appellate courts and it will serve no useful purpose to reiterate here general principles so well established and understood. The difficulty arises in attempting to apply those principles to any case possessing unusual circumstances.

A well-established rule of construction which must always be borne in mind when approaching the solution of a problem such as that before us has frequently been quoted from *Ex parte Haskell*, 112 Cal. 412, 416 [44 Pac. 725, 32 L. R. A. 527], wherein the court said: ''It is urged . . . that the particular provision in question is unreasonable and oppressive, and that it is unequal and unlawfully discriminating . . . A municipal ordinance must be very clearly obnoxious to such objections as those made, or some one of them, before it will be declared invalid by the courts. Every intendment is to be indulged in favor of its validity, and all doubts resolved in a way to uphold the law-making power; and a contrary conclusion will never be reached upon light consideration. It is the province and right of the municipality to regulate its local affairs—within the law, of course,—and it is the duty of the courts to uphold such regulations, except it manifestly appear

that the ordinance or by-law transcends the power of the municipality, and contravenes rights secured to the citizen by the constitution, or laws made in pursuance thereof.''

In respect to the provisions of the ordinance basing the license fee to be charged upon the number of employees at the laundry plant, appellants, while conceding the general proposition that license charges for revenue purposes on business or occupations transacted within a municipality may properly be based upon the volume of business done therein and that various means have been lawfully employed for measuring the volume, including gross receipts, number of vehicles employed and number of employees, insist that under the circumstances here to base the license fee on the number of employees at their plant outside the city operates extra-territorially and exceeds the power of the city, unlawfully discriminates against them and in favor of laundries doing their washing within the city, and violates the principle that an ordinance may not be devised solely for the purpose of erecting a protective tariff for the benefit of businesses located within the city. No case has been cited by either the appellants or the respondents which is strictly analogous on its facts.

Article XI, section 11 of the Constitution of California provides: ''Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws.'' Article XI, section 12 thereof provides: ''The legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.''

Palo Alto operates under a freeholder's charter, of which article II, section 6 gives the city power, ''To exercise police powers and make all necessary police and sanitary regulations, to adopt ordinances and prescribe penalties for the violation thereof.'' Article II, section 7 thereof provides for the authority, ''To levy and collect taxes and assessments, impose license fees for revenue or regulation, and provide all means for raising the revenue necessary for the City.''

██ ''A municipal ordinance must consist with the general powers and purposes of the corporation, must harmonize with the general laws of the state, the municipal charter, and the principles of the common law. (*Ex parte Frank,* 52 Cal. 606,

609 [28 Am. Rep. 642] ; *Ex Parte Kearny,* 55 Cal. 212, 225.) One of the limitations upon such ordinances is that they can have no extraterritorial force unless by express permission of the sovereign power; in the nature of things this must be so unless intolerable confusion and evil are to result; and the Constitution of the state, recognizing the necessity for such a restriction, has provided (Const., art. XI, sec. 11) that 'Any county, city, etc., may make and enforce *within its limits* all such local, . . . and other regulations, as are not in conflict with general laws.' '' (*South Pasadena* v. *Los Angeles Terminal Ry. Co.,* 109 Cal. 315 [41 Pac. 1093].) ''Municipal ordinances are necessarily local in their application. Usually they operate only in the territory of the municipality by which they are enacted and can have no force beyond it.'' (McQuillan, Mun. Corps. Rev., vol. 2, p. 723, par. 693.)

In the case of *In re Smith,* 33 Cal. App. 161 [164 Pac. 618], an ordinance of the city of Tropico, among other things, contained a provision in effect making it unlawful, without first obtaining a license so to do, for any person to operate or carry on the business of operating any auto bus or motor vehicle over the streets of said city in carrying passengers for hire from one point to another, both of which points are outside the boundaries thereof. Holding that the ordinance was invalid, the court said: ''While under its police power such city may adopt and compel the observance of all reasonable measures intended for the regulation of traffic over the streets by all persons operating motor vehicles thereon, its sole power to levy a tax of this character is found in subdivision 10, section 862, of the charter for cities of the sixth class (Deering's Gen. Laws, ed. 1915, p. 1123), which provides that the board of trustees of said city shall have power 'to license, for the purpose of revenue and regulation, all and every kind of business authorized by law and transacted and carried on in such city or town, and all shows, exhibitions and lawful games carried on therein; to fix the rates of license tax upon the same, and to provide for the collection of the same by suit or otherwise.' Under this provision the power of the city to impose a license upon a *business* is clearly limited to that only which is 'transacted and carried on in such city.' That by virtue of this section the city of Tropico may require persons, companies, or corporations who *therein* conduct the *business* of transporting passengers for hire to be licensed, admits of no question. It is the occupation, however, not an act which is merely incidental thereto, which is subject to the tax.''

The case of *Kansas City* v. *Seaman,* 99 Kan. 143 [160 Pac. 1139, L. R. A. 1917B, 341] involved an attempt to impose a license tax on a laundry business which sent an employee from Kansas City, Mo., where its laundry was located, to Kansas City, Kansas, to pick up by means of a horse and wagon the linen of its patrons there, take it to the laundry, and when it was ready for delivery, return it to its patrons and collect the charges. The ordinance of Kansas City, Kansas, for the violation of which the defendant had been convicted, provided that no person, either as principal, officer, agent, servant, or employee, should carry on or operate within the city any calling, trade or occupation therein specified, without first obtaining a license therefor. The ordinance fixed the occupation tax for laundries as follows: "Laundry Wagon. Any person or corporation conducting, pursuing or carrying on a laundry business by collecting or delivering laundry by means of a wagon or other vehicle, for each wagon or vehicle, $10." The court said: "We construe the ordinance as imposing an occupation tax upon the laundry business; the amount of the tax against the business being determined by the number of wagons employed therein.

"There are two reasons why we think the judgment convicting the appellant must be reversed: First, he was not carrying on the business of a laundry within the city, and therefore was not within the terms or contemplation of the ordinance. The laundry was conducted in Kansas City, Mo. . . . He had no place of business in Kansas City, Kan., but was simply using the streets for the lawful purpose of transporting from that city to the state of Missouri articles to be laundered and to return them to the owners when the service was completed." The case then goes on to discuss a question of interstate commerce. Concluding the opinion, the court held: "While engaged in collecting articles to be laundered or in returning them to the owners in Kansas after the labor and service had been performed in Missouri, the appellant, as the servant and agent of his employer, was not carrying on the laundry business in Kansas; and for that reason alone was not within the provisions of the ordinance which purports to levy an occupation tax upon persons carrying on such business within the state."

In *People* v. *Sackett,* 6 Cal. App. (2d) (Supp.) 763 [43 Pac. (2d) 1115], the Appellate Department of the Superior Court, County of Los Angeles, had under consideration an

ordinance of the city of Los Angeles attempting to regulate transportation companies "which operate between points, stations or depots, one or more of which are within and one or more of which are without said city; and which do not, on the same continuous run, receive and discharge passengers or freight within said city." It was held that the ordinance was void as being an attempted regulation of matters not local or municipal and as unreasonably discriminatory and obnoxious to the provisions of article I, section 21, of the California Constitution.

Appellants point out that inasmuch as the number of their employees at their laundry or washing plant is directly related to the total volume of their business derived from all localities in which it originates or is collected, which volume is approximately $60,000 a year, whereas only about $900 a year thereof comes from within Palo Alto, the effect is to raise revenue for the city of Palo Alto on business not local or transacted within the municipality bearing an overwhelming ratio to that reached by the same license tax and done within the city. In other words, in appellant's case, of their business sought to be reached by and burdened with this license tax, more than sixty times as much is done outside the city as is done inside. The argument is that this attempts to reach out and tax non-local pursuits for revenue by the ingenious method of tying the license measure to an incidental part or branch of the business carried on in an almost inconsequential proportion within the city. It is further urged that the tax is just as definitely oppressive and discriminatory against the appellants and others in their situation as a measure which exempts the inside concern but levies a license tax on the one having its established or principal place of business or laundry plant outside, but coming into the city to do some business, or as one which levies a disproportionately smaller flat license charge upon the local one than upon the one operating a delivery service within from a laundry situated outside, both of which methods are condemned by the authorities. (*Buenaman* v. *City of Santa Barbara*, 8 Cal. (2d) 405 [65 Pac. (2d) 884, 109 A. L. R. 895]; *In re Hines*, 33 Cal. App. 45 [164 Pac. 339]; *Ex parte Frank, supra.*) Respondents argue that while the method of calculating the tax is novel and to their knowledge has never been under judicial review, it is nevertheless valid; that it does not tax business done outside the city limits; that the ordi-

nance merely provides a license fee for the privilege of engaging in business in the city of Palo Alto; that the amount of the fee is not based upon the earnings of the licensee, but upon the size of the plant, and that the city is not concerned with the volume of business done by any laundry. These arguments do not, in our opinion, satisfactorily dispose of those advanced by appellants. Every occupational or business tax may be said to be but a levy of a license fee for the privilege of engaging in business. The distinction attempted is one of terms only. When we speak of the size of the plant and adopt as the measure the number of employees therein, we are not speaking of mere physical dimensions of buildings, or the like, but of the size of the group employed, which is very definitely related to the volume of business done, in that productive labor produces quantity or volume of· output and affects the amount of business done in terms of dollar and cent value. It has been held that the number of employees in a laundry plant is a way of gauging the amount of business done therein within the meaning of an ordinance requiring licenses to be "discriminating and proportionate to the amount of business." In *Ex parte Sisto Li Protti*, 68 Cal. 635 [10 Pac. 113], it was said: "Whether the number of persons employed in the various *laundries of the city* is the basis by which can best be gauged the amount of business done *therein,* or not, it is *one* way of doing so, and for aught we know, the safest way. The city council cannot count the various articles of wearing apparel laundried by the various laundries. But it is fair to presume that no more persons are employed in such establishments than are necessary to the performance of the work, and as a consequence, that the amount of business done by such establishments is in proportion to the number of persons employed therein." (Emphasis added.) It will be noted that this case dealt only with a license tax imposed upon the *laundries of the city* in respect to the amount of business done *therein* and that it is not authority for the proposition that the number of employees at the place where the washing is done is a valid basis for computing the fees to be paid by laundries having their plants outside the city and doing but a small portion of their business within the city by picking up and delivering therein articles washed elsewhere. This question was not involved nor discussed in the case. Since the number of employees is in a general way proportionate to the amount of business done, and since in

this case the total amount of business done is about $60,000 per annum, of which only about $900 per annum comes from within Palo Alto, it follows that the license tax is non-local and operates upon business outside of Palo Alto in proportion to the difference in amounts. It is an invalid attempt by the city to make its ordinance extraterritorial in scope and application. If the method were upheld, it would be possible to subvert the entire principle of local application of municipal revenue measures. We also hold that the case is governed by the principles laid down in *Buenaman* v. *Santa Barbara, supra,* and related cases, and that section 215, subsection "c" of the ordinance is void as an unlawful and unreasonable discrimination against and denial of the equal protection of the law to laundries doing their laundering and having their plants outside of Palo Alto, but deriving some of their business from within said city. It also unlawfully discriminates against those engaged in Palo Alto in the business of taking orders for laundering or washing to be done by laundries maintaining their washing plants and doing their business outside the city. The business of such solicitors may be an independent calling having no logical connection whatsoever with the number of employees at the plant where the washing is done.

It is our opinion that the views expressed herein do not conflict with the case of *California F. S. Co.* v. *Santa Monica,* 206 Cal. 714 [275 Pac. 948]. In that case persons conducting the business of operating motor-propelled vehicles for the transportation of baggage, express, freight, goods, merchandise or machinery were required to pay semi-annually a license tax computed upon the annual tonnage of freight, wares and merchandise so transported. Whether the attempt was to collect the license tax based upon the total tonnage handled in pursuance of business done both within and without the city was not specifically commented upon. The principal point was whether the company was engaged in business in the city of Santa Monica within the meaning of the ordinance, since its principal place of busisness was in Los Angeles and only a portion of its transportation functions was carried on in Santa Monica. The court held that it was engaged in business within the city of Santa Monica and frequently throughout its decision referred to and stressed *its business in said city.* One of the authorities quoted from as strengthening respondent's case was *The Emporium* v. *City of San Mateo,* 177 Cal. 622 [171 Pac. 434], the language selected being as follows: "When a

business institution, though located as to its central place of conduction or of the sale of its goods or products in one city or town, conducts through delivery wagons or other vehicles a regular system of delivery to customers within another municipality, the latter under proper authority, may impose a license tax upon the wagons or other appliances *of the distributing business which is thus actually done within it* and upon and along its streets.'' (Emphasis added.) A careful reading of the case discloses that the business which was being taxed was that done within and along the streets of Santa Monica and in the absence of any language indicating that the tonnage handled elsewhere should be included in the computation for the purpose of the city license tax, it will not be presumed or inferred that it was the intention of the court to hold that it could be based upon anything more than the amount of tonnage handled in business *actually done within the city.*

As to the police and sanitary regulations involved in sections 678 and 684 of the ordinance, as amended, appellants argue that they offend the constitutional principles of equal protection of the law for the precise reasons set forth in the case of *In re Blois,* 179 Cal. 291 [176 Pac. 449], declaring void the provisions of a former ordinance of the city of Palo Alto, relating to the same subject. While this question has been extensively briefed on both sides, the point is made by respondents that it is improperly raised on this appeal, as the facts pleaded in the First Amended Complaint show that appellants have fully complied with all of the provisions of the respondent city's ordinances except the payment of the license tax of $180 per year based upon the number of employees at the plant where their washing is done and no complaint whatever is made of any attempt to wrongfully enforce any other provisions of the same. We agree with respondents' position in this regard. Said amended complaint, whose allegations under the stipulation constitute the factual basis of the case before us, tenders no issue with respect to any wrong or threatened wrong of which appellants can complain or upon which an injunction might be based in regard to the inspection features of the ordinance or the fees to be charged for such inspection.

The judgment is reversed with instructions to the trial court to enter its judgment in favor of the plaintiffs and enjoining the defendants from enforcing or threatening to enforce against plaintiffs the provisions of the ordinance requiring the payment of a license fee based upon the number of em-

ployees at their laundry plant situated outside the city of Palo Alto.

Thompson, Acting P. J., and Tuttle, J., concurred.