[Civ. Nos. 15230, 15367, 15704. First Dist., Div. One. Apr. 28, 1953.]

SECURITY TRUCK LINE (a Corporation), Respondent, v. CITY OF MONTEREY et al., Appellants.

Russell Zaches for Appellants.

Rankin, Oneal, Luckhardt, Center & Hall and Marshall S. Hall for Respondent.

PETERS, P. J.—The Security Truck Line is a corporation licensed as a highway carrier by the Public Utilities Commission. During the winter fish packing season it hauls fish by its own trucks and by subcontracts with subhaulers into Monterey from outside the county, and delivers the fish to several canneries there located. The city,* by ordinance, and by an amendment thereto specifically covering seasonal fish haulers, has imposed upon the plaintiff a business license tax based upon the weight of each of its trucks and upon each truck of the subhaulers employed or used by plaintiff in such hauling. The plaintiff's principal place of business is in San Jose, located in a county different from the city of Monterey, and the sole acts performed by plaintiff in Monterey are the deliveries of such fish. The ordinance recites that it was passed solely as a revenue measure.

The plaintiff brought this action against the city and its officers to have the ordinance declared unconstitutional and to have its enforcement enjoined. Upon posting a bond, plaintiff then secured a temporary restraining order, and, after a hearing, secured a preliminary injunction, prohibiting the defendants from enforcing the ordinance during the pendency of the action. Defendants have appealed from that order—appeal No. 15230.

Thereafter, the defendants failed to file an answer or demurrer, and, after a warning from plaintiff's counsel, the default of defendants was entered. Defendants moved to set aside the default under section 473 of the Code of Civil Procedure. The motion was denied. Defendants have appealed from the order denying their motion to set aside their default—appeal No. 15367.

As a result of these proceedings a default judgment was entered against defendants. An appeal has been taken from that default judgment—appeal No. 15704. The three appeals have been consolidated.

But two basic questions are presented on these appeals. First, we must decide whether or not the trial court properly denied the motion for relief from default. Second, we must decide, at least if the order denying the motion for relief from default is affirmed, whether the conclusion that the ordinance as amended is discriminatory and unconstitutional is supported.

---

*(Monterey is a chartered city—see Stats. 1925, chap. 32 of Resolutions, p. 1292.)

It is our opinion that the order of the trial court refusing to set aside defendants' default must be affirmed. The complaint was filed on October 11, 1951. The defendants were properly served within the county on that day or immediately thereafter. A temporary restraining order was issued, and a hearing had on the application for the preliminary injunction on October 22, 1951. The preliminary injunction issued October 25, 1951, and defendants appealed therefrom on November 14, 1951. On November 16, 1951, some five weeks after the filing of the complaint and proper service on defendants, plaintiff's counsel requested entry of defendants' default and it was entered. On November 20, 1951, defendants gave notice of a motion to be heard on November 26, 1951, to set aside their default under section 473 of the Code of Civil Procedure, claiming mistake, inadvertence, surprise and excusable neglect. On this same day counsel for defendants appeared at the hearing at which the court was considering whether to enter judgment based on the default, and objected to the entry of the judgment. Various affidavits were introduced, some testimony taken, and the evidence taken upon the hearing at which the preliminary injunction was granted was introduced. The court thereupon ordered judgment to be entered, and a permanent injunction issued.

By a minute order dated December 17, 1951, and filed on December 24, 1951, the court denied the motion to set aside the default. This order also recites that by oral stipulation that motion was expanded to include a request to set aside the judgment, and this portion of the expanded motion was also denied.

The affidavits of the defendants in support of their motion to be relieved of default admit that on November 1, 1951, counsel for plaintiff wrote to the city attorney reminding him that no appearances had as yet been made by defendants and asking his intention in this regard, and then they aver press of business in various respects as an excuse for failing to file such appearance. This excuse has been abandoned on this appeal. The sole ground now relied upon to secure a reversal of the order refusing to set aside the default is to be found in the averments contained in the affidavits that the city attorney honestly but erroneously believed that the appeal from the order granting the preliminary injunction operated as a stay of all proceedings in the main action. It is

contended that this honest mistake of law, as a matter of law, compelled the granting of the motion for relief from default.

This contention cannot be sustained. ▉ The determination as to whether such a motion should or should not be granted is within the discretion of the trial court. In the absence of an abuse of such discretion its determination will not be set aside.

▉ An honest mistake of law is, of course, a valid ground for granting relief (*Douglass* v. *Todd*, 96 Cal. 655 [31 P. 623, 31 Am.St.Rep. 247]; *Beard* v. *Beard*, 16 Cal.2d 645 [107 P.2d 385]; *Fickeisen* v. *Peebler*, 77 Cal.App.2d 148 [174 P.2d 883]; *Svistunoff* v. *Svistunoff*, 108 Cal.App.2d 638 [239 P.2d 650]), and, in a proper case, where the mistake is an honest one, where the problem involved is complex and debatable, and where there are no elements of negligence, laxness or indifference, may compel the granting of such relief. (*Waite* v. *Southern Pac. Co.*, 192 Cal. 467 [221 P. 204];.*Roehl* v. *Texas Co.*, 107 Cal.App. 708 [291 P. 262]; *Brill* v. *Fox*, 211 Cal. 739 [297 P. 25].) ▉ Ignorance of the law, at least where coupled with negligence in failing to look it up, will not justify a trial court in granting relief (*Shearman* v. *Jorgensen*, 106 Cal. 483 [39 P. 863]; *Penryn Land Co.* v. *Akahori*, 37 Cal.App. 14 [173 P. 612]), and such facts will certainly sustain a finding denying relief. (*Garroway* v. *Jennings*, 189 Cal. 97 [207 P. 554]; *Miller* v. *Lee*, 52 Cal. App.2d 10 [125 P.2d 627]; *Salazar* v. *Steelman*, 22 Cal.App. 2d 402 [71 P.2d 79]; *Ingrim* v. *Epperson*, 137 Cal. 370 [70 P. 165]; *Willett* v. *Schmeister Mfg. Co.*, 80 Cal.App. 337 [251 P. 932]; *Mahana* v. *Alexander*, 88 Cal.App. 111 [263 P. 260]; *Dineen* v. *San Francisco*, 38 Cal.App. 2d 486 [101 P.2d 736].)

There is a somewhat tenuous line between a mistake of law and ignorance of law. The difference is probably only one of degree. In such cases all factors involved must be considered to determine whether relief should be granted or denied. ▉ While there is a strong public policy in favor of permitting a trial of a case on its merits, the determination as to whether a particular mistake of law warrants the granting of relief reposes largely in the discretion of the trial court. (*Beard* v. *Beard*, 16 Cal.2d 645 [107 P.2d 385].) In the instant case we are not interested in the question as to whether the trial court could have granted relief based on the claimed mistake of law, but, since the trial court denied relief, only in whether such holding was within its discretion.

■ The assertion that counsel for the defendants believed that the appeal for the preliminary injunction acted as a stay and made it unnecessary for appearances to be made in the main action is not sufficient to compel a reversal of the order denying relief. The problem of law involved is a simple one. Its solution is readily ascertainable. When this is coupled with the fact that counsel for plaintiff warned counsel for defendants that appearances were necessary and did not take the default until over two weeks had elapsed after the warning, it is clear that the trial court was justified in believing that the failure to look up the law indicated at least indifference. Under the authorities above cited it must be held that the order denying relief is supported by. the record and was well within the discretion of the trial court. That being so, this order must be affirmed.

■ This brings us to the question of the constitutionality of the ordinance as amended. Inasmuch as this is an appeal from a default judgment holding the ordinance as amended unconstitutional, this question must be determined from the facts alleged in the complaint, considering that pleading as an affidavit, and from the affidavits and evidence produced at the hearing of the motion for a preliminary injunction.

The complaint, so far as pertinent here, alleges that plaintiff hauls fish into Monterery pursuant to permits from the Public Utilities Commission designating it as a radial highway common carrier and as a highway contract carrier. It is averred that the principal place of business of plaintiff is in San Jose, and that its principal activities are in hauling fruit and vegetables in Santa Clara County; that its only activity in Monterey is to deliver bulk commodities in that city, and that it has no place of business, no agents and no terminus in Monterey. It is then averred that the canneries of Monterey formerly relied on sardines caught in Monterey Bay or nearby, but that in recent years the species has been depleted so that the only alternative to closing the canneries has been to bring in sardines from Hueneme, Ventura County, and Avila, San Luis Obispo County; that the only reasonable means of transport is highway transport; that the sardines are highly perishable, and that the canning of such fish is a seasonal industry carried on in the fall and winter months.

It is then averred that plaintiff has 60 trucks; that its other commitments are such that it does not use over four of its own trucks at any one time on these fish hauls; that its other commitments and the nature of the fish hauling business

make it necessary to rotate the use of its trucks so that most of its trucks are used in this fish hauling at one time or another during a season; that the uncertainty of the number of trucks needed at any one time makes it necessary for plaintiff to augment its own fleet of trucks by contracting with licensed subhaulers as independent contractors; that many of these subhaulers haul fish for plaintiff only occasionally, and some only once a season. It is then alleged that, except for the above described transactions, plaintiff has never conducted or held itself out as conducting a general transportation business in Monterey; that prorated on a tonnage mile basis, the Monterey deliveries made by it and its subhaulers constitute but 1 per cent of its total business.

The complaint then sets forth the facts relating to the passage of the original license tax ordinance in 1948, and quotes section 27 thereof that imposes an annual license tax upon the business of operating a truck in or where one terminus is in Monterey, and section 50 providing the penalties for violation; and then recites the passage of and quotes from the September 18, 1951, amendment to section 27, passed as an emergency measure. This amendment specifically provides that trucks delivering fish in Monterey "are engaged in doing business" in that city and "do so on a seasonal basis." Fees are set forth for the fish packing season of one-half those provided in the original ordinance.

Plaintiff avers that, under the ordinance as interpreted by the city, plaintiff is required to pay a fee of $13.50 in order to license each one of its fish hauling vehicles, even if it transports but a single load into the city, with the result that, because of the necessary rotation of its trucks, plaintiff, if the ordinance is valid, will be required to license a substantial portion of its fleet plus the trucks of subhaulers that haul for it occasionally. Complaint is made that the rate structure for licensed trucks cannot and does not reflect amounts paid in such taxes.

It is then averred that the ordinance as amended is void upon its face; that it is discriminatory and in violation of several provisions of the federal and state Constitutions; that it represents an attempt to legislate beyond the scope of municipal affairs; and that it invades the powers of the Public Utilities Commission.

Past and threatened future prosecutions for violation of the ordinance are averred, and then it is averred that some of plaintiff's employees and a substantial number of its sub-

haulers have advised plaintiff that they will have to refuse to haul fish into Monterey unless freed from the threat of prosecution or unless the payment of any fines is guaranteed.

At the hearing of the application for a preliminary injunction certain affidavits were filed, the complaint and a copy of the challenged ordinance introduced, and, after the court had indicated a desire that the parties proceed as if this was a ''full proceeding,'' the plaintiff called its president and its operating manager. The president testified as to the nature of his company's permits and then declared that his firm's principal place of business was San Jose; that it had no place of business, agents, employees, telephone or address in Monterey; that prior to 1950 plaintiff had done no hauling into Monterey except for a few petroleum trucks; that he had never received any complaints from city officials that there was any spillage from the trucks carrying fish, or that they caused traffic congestion or street damage; that in hauling the fish an overabundance of trucks had to be kept at the two fish landing ports because of the irregular size of the fish catches and due to the fact that fish have to be handled immediately; that subhaulers are hired after the close of their agricultural season; that no subhauler is bound to carry any load so that there is a large turnover in subhauler personnel and equipment; that the fish are hauled in open or partially closed tanks with ice on top; that in order to maintain firm fish for canning the trucks have to be dispatched on a close schedule; that the company is not paid to load or unload the trucks and the drivers do not aid in these acts; that the contracts with the canneries to haul the fish are not made in Monterey. At any one time some seven or eight of plaintiff's trucks are assigned to the fish hauling business. In one month, for example, plaintiff's trucks made 25 to 30 separate hauls, while subhaulers made 30 to 35 trips. Each load is between 15 to 20 tons. His testimony in reference to the amount of fish hauling revenue earned by his company is somewhat confusing, but apparently in the months referred to, fish haul income constituted over 20 per cent of plaintiff's total income.

The trucks do not remain in Monterey after they are unloaded. Plaintiff has no parking area in that city for its trucks, nor does plaintiff use the municipal parking area. A clerk at Salinas pays off the drivers.

The operating manager of plaintiff testified that he had received no complaints as to spillage or other infraction; that other trucking concerns haul fish into Monterey; and generally

corroborated the testimony of the president and supported most of the factual allegations of the complaint.

The city manager of Monterey testified as to the traffic problems along cannery row created by the hauling of fish, and pointed out that the trucks are given exclusive parking rights on one side of the street. He stated that there was continuous spillage from the trucks, and that the city had to pave a block and a half in the area to make it easier for the fire department to wash away the spillage. This testimony was corroborated by the affidavit of one James Rodriguez.

Based on this evidence the court announced its view that the ordinance was unconstitutional in its application and wording, and the preliminary injunction issued.

At the hearing to determine whether judgment should issue as a result of the default, at which the city appeared to oppose the entry of judgment, the record above summarized was introduced. On this record the default judgment was entered.

Before directly passing upon the question of the constitutionality of the challenged ordinance, its relevant provisions should be quoted. The original ordinance, before amendment, contained the following relevant provisions:

"Sec. 2: This ordinance is enacted solely to raise revenue for municipal purposes, and is not intended for regulation."

"Sec. 4: There are hereby imposed upon the businesses specified in this ordinance license taxes in the amounts hereinafter prescribed, and it shall be unlawful for any person to transact and carry on any business in the City of Monterey without first having procured a license from said City so to do or without complying with any and all applicable provisions of this ordinance, and each day such business is carried on without a license shall constitute a separate violation of this ordinance."

"Sec. 6: The amount of any license imposed by this ordinance shall be deemed a debt to the City of Monterey, and any person carrying on any business mentioned in this ordinance without having a license from said city so to do, shall be liable to an action in the name of said city in any court of competent jurisdiction, for the amount of license by this ordinance imposed on such business, together with all penalties then due thereon in any such action, and the sum of $35

which, if judgment be recovered, shall be applied as attorney fees for said plaintiff and included and assessed as recoverable costs in said action.''

''Sec. 27: Every person carrying on the business of operating any truck, trailer or other vehicle for the transportation of baggage, freight, household goods, merchandise, or materials for hire, which may or may not operate over a defined route within the City of Monterey, or between any points, one terminus of which is within the City of Monterey, shall pay for each vehicle an annual license tax as follows: [The schedule of truck charges follows, calculated according to unladen weights—it runs from $8 to $27 per year] . . .''

''Every vehicle licensed under this Section shall have conspicuously displayed thereon the license plate furnished by the Collector.''

''Sec. 50: Any person, violating any of the provisions of this ordinance, or knowingly or intentionally misrepresenting to any officer or employee of this city any material fact in procuring the license or permit herein provided for, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punishable by a fine of not more than $500.00 or by imprisonment in the city jail for a period of not more than six months, or by both such fine and imprisonment.''

By an emergency ordinance passed on September 18, 1951, section 27 above quoted was amended by adding the following provision thereto: ''Vehicles delivering fish to the fish canneries in Monterey for canning or reduction purposes are engaged in doing business in the City of Monterey and do so on a seasonal basis. Any such vehicle so delivering fish for canning or reduction purposes during the period from August 1st of any year to January 31st of the succeeding calendar year shall pay for each vehicle an annual license fee on the basis of one-half of the fees set forth in subsections (a) and (b) of this section upon complying with the terms and conditions therein set forth.''

The effect of the amendment was to halve the fees set forth in the original ordinance that applied to all truck carriers, and to declare, legislatively, that fish deliveries by any vehicle constituted the doing of business in Monterey.

Is this ordinance constitutional? ■ The city claims that in imposing this tax it was merely exercising its powers over local affairs to raise revenue as provided in article XI of

the state Constitution. There can be no doubt that a proper license tax may be imposed under such sections. (*West Coast Adver. Co.* v. *San Francisco,* 14 Cal.2d 516 [95 P.2d 138]; *Ainsworth* v. *Bryant,* 34 Cal.2d 465 [211 P.2d 564].)

If the tax here involved is imposed upon a taxable local event, that is, if the carrier is doing business in Monterey and if the measure of the tax is not discriminatory, then, in our opinion, the tax is valid. But if the tax is basically upon an event occurring outside the city, or, if the tax is discriminatory as to plaintiff, then it is invalid.

The extremes of these situations can best be illustrated by the cases. ■ A city may not tax a carrier simply because its trucks pass through the city. (*Matter of Application of Smith,* 33 Cal.App. 161 [164 P. 618].) ■ Nor may it tax a carrier where it maintains no place of business in the city and only makes occasional deliveries there. (*California F. S. Co.* v. *Santa Monica,* 206 Cal. 714 [275 P. 948].) ■ Moreover, it cannot base the tax on an extraterritorial event—the taxable event must occur in the taxing city. This was well illustrated in *Ferran* v. *City of Palo Alto,* 50 Cal. App.2d 374 [122 P.2d 965]. There a Palo Alto ordinance was held invalid for imposing a graduated tax upon a laundry collecting and delivering laundry in Palo Alto and other places, but where the laundry work was done in San Francisco, which tax was based upon the number of employees in the San Francisco plant. It was held that measuring a tax by the number of employees in a plant outside the taxing city was similar to a gross receipts tax based in part on receipts collected outside the city, and was void as a denial of equal protection and because of discrimination against the outside business for failure of apportionment. Plaintiff urges that the rule of this case is here applicable.

Defendants rely on *City of Los Angeles* v. *Tannahill,* 105 Cal.App.2d 541 [233 P.2d 671]. There an ordinance of Los Angeles graduated in accordance with unladen weights imposed a graduated license tax on trucks and trailers operated into the city from the neighboring suburban manufacturing city of Vernon. The ordinance excluded "occasional and incidental" operations and defined those terms. The ordinance was upheld.

A similar result was reached in *California F. S. Co.* v. *Santa Monica,* 206 Cal. 714 [275 P. 948], where a carrier with a place of business in Los Angeles was required to pay a

Santa Monica license tax graduated according to annual tonnage carried into Santa Monica. This case is important because it held that a steady course of deliveries is the doing of business, broadly implying that business is being done by the act of delivering alone.

 The ordinance here involved, as amended, purports to define the doing of business as any fish delivery within Monterey. No exception is made for occasional or incidental deliveries. That provision, insofar as it applies to such occasional or incidental deliveries, not only violates the rule stated in the above cases that a city cannot tax a carrier established elsewhere, where it makes only occasional and incidental use of the streets of the taxing city to make deliveries, but also violates section 4302 of the Public Utilities Code which prohibits any city from levying a license tax upon any regulated carrier "when the delivery of merchandise by the motor vehicle carrier in the city is occasional and incidental to business conducted elsewere." But the fact that the amended ordinance is invalid in this respect is not decisive of the present proceeding if plaintiff is not one of the class discriminated against.

Plaintiff contends that the record shows that its activities in Monterey are only occasional and incidental to its main business which is located elsewhere. In this connection it refers to its allegation in its complaint that the fish hauling business constitutes but 1 per cent of its total annual business. Its president testified, however, that during the fish season the fish hauling business accounted for a much larger proportion of its income, perhaps 20 per cent or more. However this may be, we entertain no doubt that the activities of plaintiff in Monterey, disclosed by the record, amounted to the doing of business in that city, thus empowering it to impose a proper license tax on such activity. The record shows a regular and continuous course of fish deliveries during the season, planned and carried out pursuant to a previous agreement with the canneries. The trucks do not simply pass through Monterey. That city is the terminus for such hauls. Under the cases already discussed, such activities constitute the doing of business in Monterey, a taxable event occurred there, and that city is empowered to tax such event by a proper nondiscriminatory ordinance.

Plaintiff makes a strong public policy argument to the effect that to permit cities that are simply termini for hauls

made by regulated carriers, to tax at all is unfair and unsound. It points out that its president testified that it makes over 20 deliveries annually in some 78 different communities. If each such community taxed the carrier, it is claimed, it would be subjected to an unfair burden that could not be reflected in the rate structure. This is undoubtedly a matter of general concern, and suggests that a complete overhaul of the taxing powers of communities over regulated carriers may be needed. But that is not a judicial problem. So far, the state has not seen fit, by constitutional provision or otherwise, to limit or to regulate the power of the cities where carriers do business to tax. Until that is done, the courts, under the guise of interpretation, should not attempt to create exemptions to the present constitutional provisions.

This public policy argument, while it does not result in a holding of lack of power to tax, does suggest that such tax ordinances must be scrutinized carefully to see that a city measures its tax by the taxable event that occurs in the city, and does not measure in such a manner that an unfair or discriminatory burden is imposed on such carriers. The city has a wide discretion in determining the base for such taxes, but there are limitations. The courts have not always been consistent in determining what those limitations are. (See *Continental B. Co.* v. *City of Escondido,* 21 Cal.App.2d 388 [69 P.2d 181]; *Ex parte Haskell,* 112 Cal. 412 [44 P. 725, 32 L.R.A. 527]; *E. A. Hoffman C. Co.* v. *Newport Beach,* 120 Cal.App. 525 [8 P.2d 235], as compared with *Bueneman* v. *City of Santa Barbara,* 8 Cal.2d 405 [65 P.2d 884, 109 A.L.R. 895], and then compare *Sivertsen* v. *City of Menlo Park,* 17 Cal.2d 197 [109 P.2d 928], and *Hansen* v. *Town of Antioch,* 18 Cal.2d 110 [114 P.2d 329].)

In the present case, although the power to tax is clear, the method provided for the measurement of the tax, is, in our opinion, invalid for the reason that it measures the tax by factors not entirely based on the taxable event occurring in Monterey. The tax is therefore discriminatory and void. As already pointed out, an occasional delivery cannot be taxed. The tax is imposed upon each truck making a delivery or deliveries during the fish hauling season. If that truck makes one hundred deliveries during the season, the maximum tax is but $13.50 for that truck. But if the carrier uses one hundred different trucks to make the one hundred deliveries, it must pay $13.50 for each truck, or a total of $1,350. The tax-

able event is the doing of business in Monterey—the making of regular, continuous and planned deliveries during the season. The taxable event in both cases is the same—the delivery of one hundred loads of fish in Monterey—yet one company would pay one hundred times what the other had to pay. It seems clear that the measure of the tax set forth in the ordinance has no reasonable connection with that taxable event.

Keeping in mind that the city cannot tax an occasional delivery, and the nature of the business here involved, it seems quite clear to us that a tax based upon whether the carrier uses one truck to make one hundred deliveries or one hundred trucks to make such deliveries is based upon an arbitrary standard and a purely extraneous event. The record here shows that because of the nature of the fish hauling business, and because of the demands of its business outside of Monterey, plaintiff is forced to rotate its trucks so that in the course of a season it uses practically its entire fleet. The use of subhaulers made necessary because of the nature of the business, and for whose license fees plaintiff is responsible, aggravates this situation.

None of the decided cases seems to have considered the factual and legal situation thus disclosed. The problem falls somewhere between the holding in *Ferran* v. *City of Palo Alto,* 50 Cal.App.2d 374 [122 P.2d 965], on one side, and *City of Los Angeles* v. *Tannahill,* 105 Cal.App.2d 541 [233 P.2d 671], and *California F. S. Co.* v. *Santa Monica,* 206 Cal. 714 [275 P. 948], on the other. An analysis of the factual situation involved, however, and considering the nature of the business taxed and the impact of the tax on it, leads to the conclusion that the method of measurement of the tax here involved most nearly resembles that held invalid in the Ferran case than it does the methods approved in the other cases. In the Ferran case the tax was measured by a purely extraneous event that had no relation to the quantum or nature of the business done in Palo Alto. That is equally true in the instant case. Here, the standard selected, the number of individual trucks making deliveries, rather than the number of such deliveries or the tonnage carried into the city is a purely accidental and extraneous event that has no relation to the taxable event occurring in Monterey or the quantum of business there carried on. For these reasons, it is our opinion that the measure provided in the taxing ordinance as amended is capricious, arbitrary and discriminatory. The injunction was, therefore, properly granted.

The judgments and orders appealed from in the three cases are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied May 28, 1953, and the following opinion was then rendered:

THE COURT.—In denying this petition for rehearing we reiterate that the reason why we have held that the challenged portion of the statute is invalid is that it is unconstitutionally discriminatory, in that the classification contained therein is not based on any valid or constitutional distinction, and is arbitrary. What is said in the opinion as to the "fairness" of the tax or as to "public policy" relates only to the constitutional question of the reasonableness of the classification. While a city has wide discretion in making classifications for tax purposes (*Fox etc. Corp.* v. *City of Bakersfield*, 36 Cal.2d 136 [222 P.2d 879]), a tax for revenue purposes cannot be upheld where the classification is unreasonable and is not based upon natural, intrinsic or fundamental distinctions. In such event, the tax violates constitutional limitations. This, in our opinion, is such a tax.