[L. A. No. 22586.   In Bank.   May 26, 1954.]

CITY OF LOS ANGELES, Appellant, v. BELRIDGE OIL
COMPANY (a Corporation), Respondent.

824

Ray L. Chesebro and Roger Arnebergh, City Attorneys, Bourke Jones, Assistant City Attorney, and James A. Doherty, Deputy City Attorney, for Appellant.

Wellborn, Barrett & Rodi, Vernon Barrett and F. C. L. Head for Respondent.

CARTER, J.—Plaintiff appeals from a judgment in an action to recover business license taxes from the defendant. All the facts were stipulated to, and each party moved for summary judgment. The motion of defendant company was granted.

By its complaint in this action plaintiff sought a judgment in the amount of $9,768.30 as unpaid business license taxes owing for the years 1948-1950, inclusive. This claim is based on the ground that plaintiff has a right, under the provisions of section 21.166 of the Los Angeles City Tax Ordinance, to impose a business license tax on defendant measured by the company's gross receipts. Section 21.166 provides that "Every person manufacturing and selling any goods, wares or merchandise at wholesale, or selling goods, wares or merchandise at wholesale, and not otherwise specifically licensed by other provisions of this Article, shall pay for each calendar year, or portion thereof, the sum of $8.00 for the first $20,000, or less, of gross receipts, and, in addition . . ."

Defendant company is engaged in the production and sale of crude oil and natural gas. All of its wells are located in Kern County, which is the scene of all productive operations. The field office of the defendant is located in Kern County while the main office is situated in the city of Los Angeles. Its various products which are marketed under long-term contracts, are delivered to the purchasers directly at the field plants and never enter the territorial limits of the city of Los Angeles.

The board of directors of defendant company meets in Los Angeles, most of the company's banking is done in Los Angeles and the corporate officers spend the major portion of their time at the main office in Los Angeles. Negotiations for the sale of defendant's products are conducted in part at the main office, in part at the offices of purchasers and in part by mail, telegraph or telephone communications between the defendant's main office in Los Angeles and the customer. Defendant company signs all contracts at its main office.

All obligations, including payrolls, are paid from the head office except emergency wage payments and disbursements for miscellaneous items, which are paid from a checking account in Bakersfield carrying an average balance of between $2,000 and $3,000. The main office makes all purchases, except those of an emergency nature, and payment for the sales of all items sold by defendant are received from purchasers at the main office and deposited in Los Angeles bank accounts. Based upon these facts the plaintiff city takes the position that the defendant company is engaged in selling in the city of Los Angeles the oil and gas it produces in Kern County, and that it is therefore subject to the tax provided for in section 21.166 of the Los Angeles city tax ordinance.

Defendant's theory of the case is that the company's operations are not such as to make it taxable under the provisions of section 21.166, and that even if that section is applicable, plaintiff city has no constitutional right to levy a tax under its provisions based on defendant's total gross receipts. Defendant also contends that the city's right to a recovery for the year 1948 is barred by the applicable limitation provisions of section 338, subdivision 1, of the Code of Civil Procedure.

In substance the principal problem presented is one of construction—construction as to the scope and intended purview of section 21.166 of the Los Angeles tax ordinance. Plaintiff city contends that defendant company is a person selling goods, wares and merchandise at wholesale within the meaning of section 21.166. Defendant company claims that it is not.

Defendant argues that section 21.166 covers two types of businesses. Those which are engaged in the "manufacturing and selling" of goods, wares or merchandise at wholesale and those which are engaged in "selling" of goods, wares or merchandise at wholesale. This contention is based upon the ground that if "selling" by its own force includes "manufacturing and selling" there would have been no reason to separately mention "manufacturing and selling." In view of

this language, defendant argues that the term "selling" is not intended to include "manufacturing and selling" and therefore it necessarily follows that the term "selling" was not intended to include such activities as "producing and selling" or "mining and selling." Based upon this premise, defendant concludes that the inference is clear that the term "selling" is only intended to cover businesses of a merchandising nature, where selling, rather than the creation or capture of something to sell, is the essence of the enterprise; and therefore since the dominant portion of defendant's business is the capture of something to sell, section 21.166 is not applicable.

There seems to be no doubt that the defendant company was engaged in selling, since a company which derives several million dollars a year from the sale of petroleum products is obviously engaged in selling those products. However, we still have the problem of whether the defendant company was a person "selling" within the meaning of section 21.166.

In analyzing the scope and meaning of a tax ordinance of this type, we are aware that tax laws are to be construed against the municipality and in favor of the taxpayer, but it must also be remembered that such a rule does not take precedence over other fundamental rules of statutory construction. It is fundamental that "judicial construction should be in keeping with the natural and probable legislative purpose, and avoid conflict, and harmonize all the applicable provisions of the law on the subject if possible." (McQuillin, Municipal Corporations, 3d ed., vol. 16, Taxation, § 44.12.)

Also where the problem involves the construction of a particular section of a taxing ordinance, the ordinance should be looked to in its entirety and its provisions construed together. (*Bramman* v. *City of Alameda,* 162 Cal. 648 [124 P. 243].)

In the case at bar, the section in question (21.166) is but one small part of Ordinance No. 77,000 which is the license ordinance of the city of Los Angeles. Considering the ordinance as a whole, we find that it contains various introductory sections covering such items as definitions, interpretation, enforcement, penalties, and license transfers, followed by a great many sections setting out the tax liability of specific business enterprises such as hotels, laundrys, theaters, oil wells located in the city of Los Angeles, etc. Aside from the sections referring to specific businesses, the ordinance contains three so-called "catch-all" sections: Section 21.166 provides that "Every person manufacturing and selling any

goods, wares, or merchandise at wholesale, or selling goods, wares, or merchandise at wholesale, and not otherwise specifically licensed by other provisions of this Article, shall pay; . . . ''; section 21.167 covers those who manufacture and sell or sell goods at retail and who are not licensed by other provisions; and section 21.190 provides that ''Every person engaged in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically licensed by other provisions of this Article, shall pay. . . .'' While these other sections are not in issue here, a study of their provisions and of the ordinance as a whole is helpful in construing the intended scope and meaning of section 21.166.

An analysis of the ordinance in its entirety makes it apparent that even though several hundred types of businesses are specifically provided for it is almost impossible to cover each and every type of business by a specific section. For this reason the legislative body found it expedient to include three ''catch-all'' sections which were intended to cover those business enterprises not specifically taxed by the other sections. Such ''catch-all'' provisions are not considered too vague and they have been upheld by the courts. (*City of Los Angeles* v. *Rancho Homes, Inc.*, 40 Cal.2d 764 [256 P.2d 305].)

There can be no doubt that the legislative body intended the ''catch-all'' sections to be sufficiently broad to cover all business enterprises not licensed under other sections of the ordinance. With this purpose in mind it is obvious that the language used in each of the three ''catch-all'' sections was intended to be such as would cover a wide range of activities. Our problem here is to determine whether the language of one of these ''catch-all'' sections, section 21.166, is sufficiently broad to include the business operations of defendant company.

Keeping in mind the broad scope and purpose of section 21.166 it becomes apparent that it was intended to cover all businesses engaged in manufacturing and selling at wholesale in the city and also those businesses which merely engaged in selling at wholesale in the city. Thus all businesses which are engaged in selling goods, wares or merchandise at wholesale in the city of Los Angeles and which are not licensed by other sections of the ordinance come within section 21.166. This is true regardless of whether they are engaged in ''manufacturing and selling'' or merely ''selling.'' The important thing is that they are engaged in selling within the city of Los Angeles. If they are so engaged, all gross receipts attribu-

table to selling in the city of Los Angeles are subject to the business license tax provided for by section 21.166. The fact that the goods sold are produced in remote areas is unimportant. It is also immaterial whether they are produced in a company owned plant or purchased from an independent producer. The important thing is that the taxpayer is engaged in selling goods at wholesale in the city of Los Angeles.

Section 21.166 of the tax ordinance was meant to cover those businesses, not covered by other sections, which are engaged in selling goods at wholesale in the city. It is so worded to include those who manufacture and sell as well as those who merely sell in the city. The fact that an organization is engaged in selling in the city is sufficient and it is of no import that selling is but a small part of the total effort or that selling is not difficult for the instant company. There is no reason to believe that the authors of section 21.166 were concerned with the degree of effort or expense involved in the selling of goods nor were they concerned with whether or not selling was the dominant or incidental activity of the company. The main concern would appear to be whether or not the company was engaged in the selling of goods. The purpose of the section was to place a business license tax on those activities which took place within the city of Los Angeles regardless of their relationship to activities outside the city.

The defendant company has argued that the term "selling" was not intended to include other elements such as "producing and selling" or "mining and selling," but rather that it could only mean selling of a merchandising nature. Such argument seeks to narrow the meaning of the words used to the point of actually destroying the general purpose of a "catch-all" section. The sale of goods is defined in section 1721(2) of our Civil Code as "an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." There is no requirement that the seller must be in the merchandising business before the transaction can be called a sale and likewise it is not logical to attempt to narrow the meaning of the term "selling" to include only those whose dominant business is of a merchandising nature.

There is nothing in section 21.166 or anywhere in the entire taxing ordinance indicating that the word "selling" was only meant to include businesses where selling was the dominant part of a taxpayer's business. On the contrary section 21.08(t) of the Los Angeles tax ordinance provides that "The phrase

'selling goods, wares and merchandise' shall, in addition to any other meaning established at law, be deemed to extend to and include in its application persons who engage in the business of fabricating, serving or supplying, for a price, tangible personal property furnished, produced or made at the special order of purchasers or consumers, or for purchasers or consumers who do or do not furnish, directly or indirectly, the specifications therefor.'' Thus the business of "selling" includes not only those businesses where merchandising is the dominant element but also those businesses which are engaged in "fabricating, serving or supplying" goods for a price.

In the case at bar defendant company, being a corporation, is a person as defined in section 21.08(p) of the Los Angeles tax ordinance. The petroleum products with which it deals are considered in the nature of merchandise (*West* v. *Kansas Natural Gas Co.*, 221 U.S. 229 [31 S.Ct. 564, 55 L.Ed. 716]) and the gross receipts of defendant company are derived from the sale of such merchandise. Most negotiations for these sales were conducted through the defendant's Los Angeles office and all the contracts were signed by defendant in Los Angeles. Also payment for all sales is received from purchasers at the Los Angeles office. These factors along with the other stipulated facts make it apparent that defendant's Los Angeles office was engaged in the activity of "selling goods, wares or merchandise at wholesale" within the city of Los Angeles and was therefore subject to the provisions of section 21.166 of the Los Angeles tax ordinance.

The mere fact that the products sold never entered the city of Los Angeles does not prevent the selling activities from taking place in Los Angeles. (*McGoldrick* v. *Berwind-White Coal Min. Co.*, 309 U.S. 33 [60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876].) The business license tax in question here, is based on the fact that the selling activity is carried on within the city and it is immaterial where the products are produced or delivered. In the 1953 case of *Keystone Metal Co.* v. *Pittsburgh*, 374 Pa. 323 [97 A.2d 797], the sales transaction was consummated in Pittsburgh but the goods were shipped from a point outside Pennsylvania to a plant in New Jersey. The Supreme Court of Pennsylvania held that the receipts of such sale should be included in the measure of the city of Pittsburgh's license tax, based on gross receipts. The court held that the selling activities within the city were sufficient to sustain imposition of the tax even though delivery and passage of title took place outside the city.

Defendant company also contends that even if section 21.166 is applicable, the city cannot constitutionally tax the total gross receipts of the company since such would be an attempt to impose a tax on business carried on outside the city. This argument is based on the ground that since the total gross receipts include the proceeds of products produced and delivered outside the city the effect would be to allow a city to tax transactions occurring outside its boundaries. This argument seems to lose sight of the nature of section 21.166.

■ The business license tax here sought to be collected is a privilege tax, exacted for the privilege of engaging in the activity of "selling." When this activity takes place within the city, the rate of tax may be measured by the gross receipts derived therefrom. (*Union Pac. R. R. Co.* v. *City of Los Angeles,* 53 Cal.App.2d 825, 830 [128 P.2d 408].) As stated by this court in *Martin Ship Service Co.* v. *City of Los Angeles,* 34 Cal.2d 793, 796 [215 P.2d 24], "In view of the recent decisions of the United States Supreme Court in *Memphis Natural Gas Co.* v. *Stone,* 335 U.S. 80 [68 S.Ct. 1475, 92 L.Ed. 1832], and *Central Greyhound Lines, Inc.* v. *Mealey,* 334 U.S. 653 [68 S.Ct. 1260, 92 L.Ed. 1633], the city may clearly tax plaintiffs' local activities and the gross receipts therefrom." In the case at bar it is true that some of these gross receipts are attributable to extraterritorial elements such as the production and delivery of the goods. However, there is no constitutional objection to resorting to extraterritorial elements in determining the rate of tax. (*Great Atlantic & Pac. Tea Co.* v. *Grosjean,* 301 U.S. 412 [57 S.Ct. 772, 81 L.Ed. 1193, 112 A.L.R. 293]; *Maxwell* v. *Bugbee,* 250 U.S. 525 [40 S.Ct. 2, 63 L.Ed. 1124]; *Cedar Hills Cemetery Corp.* v. *District of Columbia,* 124 F.2d 286.) The activity being taxed here is the activity of selling and such activity can be taxed by the city even though the goods never enter its territorial limits. (*Keystone Metal Co.* v. *Pittsburgh, supra,* 97 A.2d 797.)

In the instant case we can find no objection, constitutional or otherwise, to the imposition of a business license tax on the privilege of engaging in selling activities within the city. Likewise there is no objection to basing the rate of such tax on the gross receipts attributable to such selling activities, even though various extraterritorial events contribute to such gross receipts. ■ There is, however, one important limitation which should be pointed out and that is this: even though the city can tax the activity of selling it can only

base the tax on such selling activities as are carried out within its territorial limits. For this reason it is only those gross receipts which are attributable to selling activities within the city which should form the basis for the rate of tax. Gross receipts attributable to selling activities conducted outside the city should not be included. Such a construction necessarily follows from the fact that the business license tax is on the privilege of engaging in selling activities in the city of Los Angeles and as such should only be based upon such activities.

In the case of *Gotlieb* v. *City of Birmingham*, 243 Ala. 579 [11 So.2d 363], the city ordinance imposed a tax on "each packing house" and on persons "soliciting or selling packing house products." In construing the scope of this city ordinance the court held that in computing the license tax, based upon gross receipts, sales outside the territorial limits of the city should not be included. In *City of Sedalia* v. *Shell Pétroleum Corp.* (C.C.A. 8th, 1936), 81 F.2d 193 [106 A.L.R. 1327], a city license tax on persons engaged in the business of selling gasoline, based on the number of gallons sold, was held to be inapplicable to sales made outside the city. The court at page 196 stated that "there is a presumption that the governing body of the city was legislating with reference to the conduct of business within the territorial limits of the city, and there is nothing in the provision of the ordinances indicating that it was the intention to give them extraterritorial effect."

To allow a city to levy a license tax based upon gross receipts attributable to selling activities outside the city would be an unreasonable discrimination and a denial of equal protection of the law. (See *Ferran* v. *City of Palo Alto,* 50 Cal. App.2d 374 [122 P.2d 965].) If such taxation were allowed it would unjustly discriminate against those firms whose selling activities in Los Angeles compose but a small fraction of the total sales effort and whose gross receipts are in large part attributable to selling activities in other areas. As stated in *Franklin* v. *Peterson*, 87 Cal.App.2d 727, 730 [197 P.2d 788], "It is the rule that where a statute or ordinance is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, in whole or in part, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. The rule is based on the presumption that the legislative body intended not to violate the Constitu-

tion, but to make a valid statute or ordinance within the scope of its constitutional powers.'' In the instant case a just and reasonable construction requires that the measure of the tax be limited to those gross receipts attributable to selling activities within the city of Los Angeles.

It is also contended, by defendant company, that the plaintiff city's cause of action for the recovery of 1948 taxes is barred by subdivision 1 of section 338 of the Code of Civil Procedure. Defendant had previously taken the position, in the trial court, that the two-year limitation of section 339, subdivision 1 (Code Civ. Proc.) might also be applicable but in their appeal this view has been abandoned. Plaintiff argues that the four-year period of section 343 is applicable, and it therefore becomes necessary to determine whether the limitation period on the city's cause of action for taxes is governed by the provisions of section 338, subdivision 1, or by the provisions of section 343.

Section 343 of the Code of Civil Procedure provides that ''An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued.'' In view of this wording section 343 can only apply if no limitation period for the instant action is provided for in the previous sections. Defendant company contends that the instant cause of action by the city for taxes comes within the limitation period of previous section 338, subdivision 1, and therefore section 343 cannot apply. We are inclined to agree.

The three-year limitation period of section 338, subdivision 1, which is applicable to ''an action upon a liability created by statute, other than a penalty or forfeiture,'' adequately covers the instant cause.

It is true that section 338, subdivision 1, purports to cover only those liabilities created by statute, but in *King Mfg. Co.* v. *Augusta,* 277 U.S. 100 [48 S.Ct. 489, 72 L.Ed. 801], the Supreme Court of the United States construed the word statute as including municipal ordinances. Thus by the direct approach of construction it would be possible to say that the instant license tax was a liability created by statute. It is also possible to reach the same result by the indirect method since we find that a liability created by statute is a liability which would not exist but for a statute. (*Fidelity & Deposit Co. of Maryland* v. *Lindholm* (C.C.A. 9th, 1933), 66 F.2d 56, 58 [89 A.L.R. 279].) In the instant case the city license tax, though

created in the final instance by the license ordinance could not have existed but for the power delegated to the city by the state Constitution and statutes. This is true since "[m]unicipal corporations have no inherent power of taxation. On the contrary, they possess with respect thereto only such power as has been granted to them by the constitution or statute. (McQuillin, Municipal Corporations, 3rd Ed., Vol. 16, § 44.05.) In *Wright* v. *City of Lorain,* 70 Ohio App. 337 [46 N.E.2d 325], it was held that the liability of a city to pay a policeman's salary, which was provided for by city ordinance as authorized by state statutes, was a liability created by statute. Reasoning from this basis the Ohio court held that the action for the recovery of such salary was barred by the provisions of the limitation statute dealing with liabilities created by statute. Regardless of whether we prefer this indirect approach or the direct approach of construing the word statute to include ordinance, the inevitable conclusion is that the liability in question was created by statute and therefore the limitation period of section 338, subdivision 1, is applicable.

In the case at bar the three-year period of limitation of section 338, subdivision 1, which is applicable, runs from the time the cause of action accrues, and the cause of action accrues when the tax becomes delinquent. Since the tax due under section 21.166 must be paid before the close of business on the last day of February of each year (sections 21.20 and 21.24.1 of the Los Angeles Tax Ordinance), the tax for the year 1948 was delinquent on March 1, 1948. The three-year limitation period which began to run from this date expired on March 1, 1951, which was prior to the filing of the complaint by plaintiff city, and, therefore, the city's cause of action for recovery of the 1948 tax is barred.

We hold, therefore, that the defendant company is subject to the business license tax under the provisions of section 21.166 of the Los Angeles tax ordinance as here construed but that the city's cause of action to recover such tax for the year 1948 is barred.

Judgment reversed.

Shenk, J., Edmonds, J., Traynor, J., Spence, J., and Bray, J. pro tem.,* concurred.

SCHAUER, J.—I dissent. It is my view that the opinion prepared for the District Court of Appeal (reported at (Cal.

*Assigned by Chairman of Judicial Council.

App.) 260 P.2d 217), authored by Justice Fox and concurred in by Presiding Justice Moore and Justice McComb, adequately discusses and correctly resolves the issues which are presented on this appeal. For the reasons therein stated, I would affirm the judgment.

Respondent's petition for a rehearing was denied June 23, 1954. Schauer, J., was of the opinion that the petition should be granted.