[Civ. No. 18254.    Second Dist., Div. Two.    July 18, 1951.]

THE CITY OF LOS ANGELES, Respondent, v.
W. J. TANNAHILL et al., Appellants.

Laurence Phillips for Appellants.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney and Alan G. Campbell, Deputy City Attorney, for Respondent.

MOORE, P. J.—The question for decision is whether a municipality can impose a valid license tax on trucks operated for hire and graduate such tax in proportion to their unladen weights where their domicile is in a suburban city and they visit the taxing municipality "on an average of more than once a week during at least one quarter of the calendar year involved."

Appellants were conducting a for-hire trucking business with headquarters only in Vernon, a city buried in the heart of the manufacturing district of Los Angeles. They held permits as city carriers, contract carriers and radial highway common carriers and also a certificate from the Interstate Commerce Commission to operate as common carriers in interstate commerce points within 325 miles of the city of Los Angeles. From Vernon their trucks operate throughout Southern California, hauling merchandise into Los Angeles, but never

moving a cargo from one point to another within that municipality. There was no evidence of the frequency of the trips into the city other than the stipulation that they averaged "more than once a week in any quarter of the year," which fact is an essential to make such carriers liable for the license tax under subsection G of section 21.159 of ordinance 77,000 of Los Angeles, to wit:

"Exemptions and Exceptions. No fee hereunder shall be required for the operation of any motor vehicle or equipment along the streets of this city if such operation is merely occasional and incidental to a business conducted elsewhere; provided, however, that no operation shall be deemed merely occasional if trips or hauls are made beginning or ending at points within this City upon an average more than once a week in any quarter, and a business shall be deemed to be conducted within this City if an office or agency is maintained here or if transportation business is solicited here."

To escape the force of the provision that a fee will not be required where the "operation is merely occasional and incidental" and to show that appellants come within the ordinance respondent caused the stipulation to include the recital that trips were on the average made into the city "more than once a week in any quarter of the year."

The ordinance forbids (section 21.10) every person who engages in any occupation for which a license is required, to do so "until such license is first obtained." Section 21.159, subsection 4(b) provides:

"Every person whose business . . . is that of operator of any motor vehicle for the transportation of property for hire or reward, and who in the course of that business uses public streets and highways of this city for purpose of such operation, shall pay a license fee for each year, or fractional part thereof, of such operation, the amount of which shall be determined as provided in this section."

By subsection (c) the fees are computed as follows:

"1. For each vehicle, other than a tractor, or a trailer or semi-trailer, used to receive or discharge, pick-up or deliver property within this city, the annual fee shall be as follows, where the unladen weight thereof is:

4000 lbs. or less.........................................$ 4.00
Over 4000 lbs. and not more than 8000 lbs................ 8.00
Over 8000 lbs........................................... 10.00

2. For each trailer or semi-trailer so used, where the unladen weight thereof is:

| | |
|---|---|
| 1000 lbs. or less | $ 2.00 |
| Over 1000 lbs. and not more than 3000 lbs.. | 4.00 |
| Over 3000 lbs.. | 6.00 |

3. For each tractor which is used to haul one or more trailers or semi-trailers not permanently affixed thereto.......$10.00."

During the four years involved in this action appellants operated its several trucks and trailers on the streets and highways of Los Angeles. By virtue of such ordinance the city made demand for payment of the following sums for the four years indicated, to wit: $212 for 1945, $308 for 1946, $326 for 1947, $326 for 1948. In addition, penalties for non-payment aggregating $586 for the four years were demanded, as provided by the ordinance for nonpayment of such license fees[1] which were based upon the unladen weight of the vehicles.

Appellants contend that (1) the license tax imposed violates article I, section 3(5) of the city's charter; (2) the license tax must be levied under general and uniform laws "(art. I, § 2(11) (e)); (3) no discrimination in the amount of license tax shall be made between persons engaged in the same business. (art. I, § 3(5).) Because of such provisions appellants argue that they are the victims of an unjust discrimination; that a truck weighing 4,000 pounds can, and often does, handle more business than an 8,000 pound truck. In making such contention appellants overlook constitutional provisions, the law as declared by the appellate courts and as created by statute and practice.

■ By section 6 of article XI of the Constitution a city is empowered to make and enforce all laws and regulations in respect to municipal affairs subject only to the restrictions and limitations provided in its charter. Licensing, taxing and regulating occupations operating within a city is a municipal affair. The power of a city to make and enforce laws and regulations with respect to municipal affairs is reinforced by section 8 of the same article. By section 23 of article XII, every transportation entity is a public utility and is subject to control and regulation by the city in which it operates. ■ The city's charter is not a grant of powers to the municipality. ■ The power for levying taxes is a consti-

---

[1]That a portion of the license tax for each year was paid is not explained.

tutional grant which is not limited by the charter, but is accentuated by that instrument which details the city's powers of assessing, collecting and enforcing taxes and licensing and regulating any lawful business and imposing license fees. (City charter, § 2, subsec. 11 (d) (e); *West Coast Advertising Co.* v. *San Francisco*, 14 Cal.2d 516, 521 [95 P.2d 138]; *In re Montgomery*, 163 Cal. 457, 459 [125 P. 1070, Ann.Cas. 1914A 130]; *Glass* v. *City of Fresno*, 17 Cal.App.2d 555, 560 [62 P.2d 765].)

The only limitation founded upon the city's power to levy license taxes for revenue is as follows:

"No discrimination in the amount of license tax shall be made between persons engaged in the same business, otherwise than by proportioning the tax to the amount of the business done." (Charter, § 3(5), Stats, 1925, p. 1031.) But in *Barker Bros., Inc.* v. *City of Los Angeles*, 10 Cal.2d 603 [76 P.2d 97], the Supreme Court said at page 607: "Wide discretion is given legislative bodies in the imposition of taxes and the right to classify for such purposes is of wide range and flexibility . . . The equal protection clause does not detract from the right of the State justly to exert its taxing power or prevent it from adjusting its legislation to differences in situation or forbid classification in that connection, 'but it does require that the classification be not arbitrary but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation.' "

The Constitution is not violated where the city adopts a rational classification which affects equally all of the same class. It may classify occupations and distinguish between those of the same or similar occupations. (*Bramman* v. *City of Alameda*, 162 Cal. 648, 653 [124 P. 243].) If the license tax on laundry proprietors may be graded according to the number of their employees (*Ex parte Sisto Li Protti*, 68 Cal. 635 [10 P. 113]) or if hotels may be graded on the basis of whether the meals are cooked and served by the proprietor or are furnished "for pay" (*Ex parte Lemon*, 143 Cal. 558 [77 P. 455, 65 L.R.A. 946]) how can it be said that there is a discrimination against an operator of for-hire trucks on the basis of their unladen weights? If "any graduation will be sustained which is reasonable and fair" (*Bramman* v. *City of Alameda, supra*, p. 653) there should be no problem about grading the license tax on the vehicles of a transportation company based upon their unladen weight.

Such method is excellent for "gauging the amount of business done or the capital employed therein." (Ibid.) The manner of conducting a business, such as that done by the peddler and the storekeeper "is distinctive for the purpose of taxation." (*Ex parte Haskell*, 112 Cal. 412 [44 P. 725, 32 L.R.A. 527].) In *City of San Mateo* v. *Mullin*, 59 Cal.App.2d 652 [139 P.2d 351], the taxed attorney deemed himself aggrieved by the license tax of $15 required of him while some associates of law firms paid only $5.00. The court explained that it was each "business" operating a law office that was taxed. There was in fact no discrimination between an individual attorney and an individual plus an employee or associate.

It is an inherent quality of a state to possess the power to tax and to select its subjects of taxation. It is not bound to tax every member of a class or none. (*Carmichael* v. *Southern Coal & Coke Co.*, 301 U.S. 495, 508 [57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327].) An ordinance must be clearly obnoxious as unreasonable and oppressive to justify nullifying it by judicial decree. Since it is the right of a city to regulate its municipal affairs the courts must uphold such regulations unless it is manifest that the ordinance transcends the power of the municipality and violates the rights secured to the citizen by the Constitution or the statutes. (*Ex parte Lemon, supra*, p. 563.)

It is the general rule that a license tax on vehicles may be fixed at a specified sum or graded according to type, size, or use. (53 C.J.S., p. 600.) From the early period of California's legislation for the purpose of regulating traffic and licensing the operation of motor vehicles, the amount of fee charged has been based upon the unladen weight of the automobile. The most recent statute upon the subject fixed the annual registry fees upon cars not exceeding 4,000 pounds unladen at $10 and graduates the tax on vehicles weighing over 14,000 pounds to $120. Trailers are regulated similarly and the registration charges upon them are also graduated in proportion to their unladen weight. (Veh. Code, § 372.) A Georgia decision is directly apropos.

The city of Savannah enacted an ordinance for the purpose of raising revenue. For the use of the streets for business purposes persons and firms were classified as those (1) who operate business without vehicles of any kind and (2) those who use vehicles on the streets. The first class must pay the specific tax provided for each specified kind of business. Those

of the second class, in addition to the specific tax required for their principal business, must pay a graduated tax, commencing with the one-horse cart at $8.00; every operator of an automobile of one ton or less capacity—$10. The Supreme Court held the ordinance valid: the city has power either to impose the tax or to prohibit the use of its streets for business purposes; it does not tax motor vehicles or their operation; the city may classify businesses according to whether they are conducted on the streets or not; the ordinance is not void because it imposes the license tax as well as the "regular business license tax" for the right to carry on business generally within the city; also, the license tax is not void because the ordinance graduates the tax upon the number and sizes of the vehicles. "Two large and heavy moving motor vans of the modern type or two heavy two-horse drays will wear and damage the streets of the city more than a one-ton light type automobile truck or a one-horse dray; and the former will congest the traffic of such streets more than the latter." (*Derst Baking Co.* v. *Mayor & Aldermen of Savannah,* 180 Ga. 510 [179 S.E. 763, 768].)

The Derst decision is a forthright declaration of the law governing such matters. It is set in clear and emphatic language and expresses accurately the law of this state. Not only is there no constitutional prohibition against such ordinance, but on the contrary, under the cited constitutional provision, the city of Los Angeles, by virtue of its freeholders' charter is empowered to legislate upon any municipal affair. Also, it may levy a license tax upon those who have their offices elsewhere but conduct a business of transporting goods for hire in a neighboring city. (*California Fireproof Storage Co.* v. *Santa Monica,* 206 Cal. 714 [275 P. 948].) In that case the plaintiff maintained offices in Los Angeles and had no depot or warehouse in the bay city; no equipment there except its trucks used in transporting household goods to and from Santa Monica; had no solicitors or agents there, but merely sent its trucks into the city on call. After reviewing appellate decisions the court held (page 722) that if plaintiff "is to enter said city *ad libitum* upon 'call' . . . it will transact business therein precisely as it transacts its business in the city of Los Angeles. It does not matter at which end of the line the business is initiated, its situs is the municipality of Santa Monica."

By virtue of the holdings of the last two cited decisions the ordinance 77,000 of respondent is valid insofar as

its provision for classifying vehicles by their unladen weights for the purpose of determining the amount of license taxes is concerned.

Affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied July 31, 1951, and appellants' petition for a hearing by the Supreme Court was denied September 13, 1951.