[Civ. No. 24088.   Second Dist., Div. Three.   June 1, 1960.

THE CITY OF LOS ANGELES, Respondent, v. WIL-
LIAM K. CARSON et al., Appellants.

Newell & Chester and Robert M. Newell for Appellants.

McCutchen, Doyle, Brown & Enersen, George W. Rauch, John E. Munholland and Pray, Price & Williams as Amici Curiae on behalf of Appellants.

Roger Arnebergh, City Attorney, Bourke Jones and James A. Doherty, Assistant City Attorneys, for Respondent.

FORD, J.—This is an appeal by the defendants from a judgment in favor of the city of Los Angeles in an action to recover municipal license taxes.

At the times involved in this action, the defendants were copartners. They conducted their business under the name of Cross Town Lines. The defendants' place of business was in Lynwood and they had no established place of business in the city of Los Angeles. In 1953 and 1954, they operated buses on schedule over fixed routes through Compton, Lynwood, Huntington Park, Downey, Bellflower and Paramount. None of their equipment was garaged in the city of Los Angeles. The equipment so operated on regular transit lines was also used for charter bus service. An example of such service would be the transportation of a group of people into the city of Los Angeles to the Coliseum to witness a sporting event.

The bus would be parked at the Coliseum and, after the event, the passengers would be returned to a point outside the city of Los Angeles.

On December 15, 1954, the city clerk of the city of Los Angeles made an assessment against the defendants for unpaid license taxes claimed to be due from the defendants under section 21.154 of the Los Angeles Municipal Code. The pertinent portion of that section is as follows:

''For every person engaged in the business of running, driving or operating any automobile or motor-propelled vehicle for the transportation of passengers for hire, when driven by the owner or a representative of the owner at rates per mile, per trip, per hour, per day, per week or per month, and such vehicle is routed under the direction of such passenger or passengers or of such persons hiring the same, and when such vehicle does not stand in or upon any public street, alley or other public place while awaiting employment, for each vehicle having a seating capacity of 5 to 7 persons, inclusive, $7.50 per quarter;

''For each such vehicle having a seating capacity of 8 to 10 persons, inclusive, $10.00 per quarter;

''For each such vehicle having a seating capacity of 11 to 15 persons, inclusive, $18.00 per quarter;

''For each such vehicle having a seating capacity of 16 to 20 persons, inclusive, $27.00 per quarter;

''For each such vehicle having a seating capacity of more than 20 persons, $36.00 per quarter. . . .''

Thereafter a hearing as provided for in section 21.26 of the Municipal Code was held. The findings of the Board of Review made as a result of such hearing contained a summary of charter bus trips for the period of time in question. The defendants did not dispute the factual accuracy of such summary which was as follows:

| '' Period | Number of separate buses which either picked up or discharged passengers in Los Angeles. | Total number of trips into Los Angeles during period. | Number of trips originating in Los Angeles. |
|---|---|---|---|
| 1953 1 Q | 16 | 34 | 2 |
| 2 Q | 11 | 62 | 10 |
| 3 Q | 14 | 56 | .. |
| 4 Q | 16 | 48 | .. |
| 1954 1 Q | 10 | 23 | 8 |
| 2 Q | 19 | 52 | 8 |
| 3 Q | 12 | 56 | 9 |
| 4 Q | 14 | 17 | 3 '' |

The findings also contained the following statements:

"Taxpayer did not disagree with the above figures, but stated he would be happy to obtain the required licenses if the Board of Public Utilities would permit him to operate in Los Angeles.

"Taxpayer was informed by the Board that the liability existed under Section 21.154 L.A.M.C. regardless of whether or not his buses were licensed by the Board of Public Utilities."

The basis upon which the case of the respondent is predicated is thus stated in its brief: "It is the position of the City that the tax in question is one imposed for the privilege of engaging in the described business within the City of Los Angeles. Although the amount of tax required to be paid by persons exercising the taxable privilege is graduated according to the number and capacity of the vehicles used during a quarter in the conduct of the business, the tax is not *on* the vehicle; rather, it is *on* the business, and the vehicles are used as a device by which the amount of business done is estimated for tax purposes."

■ It is, of course, clear that chartered cities are empowered to exact business license taxes for revenue purposes. (*West Coast Advertising Co.* v. *City & County of San Francisco,* 14 Cal.2d 516 [95 P.2d 138]; *City of Glendale* v. *Trondsen,* 48 Cal.2d 93, 98 [308 P.2d 1]; *Franklin* v. *Peterson,* 87 Cal.App.2d 727, 732 [197 P.2d 788].) ■ However, as stated in the Franklin case, at page 730, with respect to an ordinance imposing such a tax, ". . . it is manifest that an ordinance such as the one before us operates only within the territorial limits of the municipality and affects only those engaged in a business or profession within such limits." ■ In the case at bar, more than an occasional, isolated act of bringing persons into Los Angeles on a chartered bus is involved. The table heretofore set forth shows that a substantial and steady charter business was done by the defendants in each quarter of the years 1953 and 1954. The evidence was sufficient to establish that the defendants were engaged in the city of Los Angeles in the business described in section 21.154 of the Municipal Code. In *City of Los Angeles* v. *Tannahill,* 105 Cal.App.2d 541 [233 P.2d 671], the appellants were conducting a for-hire trucking business with headquarters in the city of Vernon. From Vernon their trucks operated throughout southern California, hauling merchandise into

the city of Los Angeles but never moving a cargo from one point to another within that municipality. In upholding the ordinance therein involved wherein the license fee was based on each vehicle used and the unladen weight thereof, the court said with respect to the power of the city to levy a license tax for revenue purposes in such a case, at page 547: "Also, it may levy a license tax upon those who have their offices elsewhere but conduct a business of transporting goods for hire in a neighboring city. (*California Fireproof Storage Co.* v. *Santa Monica,* 206 Cal. 714 [275 P. 948].) In that case the plaintiff maintained offices in Los Angeles and had no depot or warehouse in the bay city; no equipment there except its trucks used in transporting household goods to and from Santa Monica; had no solicitors or agents there, but merely sent its trucks into the city on call. After reviewing appellate decisions the court held (page 722) that if plaintiff 'is to enter said city *ad libitum* upon "call" . . . it will transact business therein precisely as it transacts its business in the city of Los Angeles. It does not matter at which end of the line the business is initiated, its situs is the municipality of Santa Monica.' " In the present case, with respect to trips which originated outside the city, the passengers were transported to a specific point in the city for a particular event, left the bus, and later re-entered for the purpose of returning to the place from which their trip commenced.

We turn now from the question of the power of the city to impose such a license tax to the problem of the construction of section 21.154 of the Municipal Code in the light of the facts in this case. ▮ Our duty is to ascertain the legislative intent so as to effectuate the purpose of the ordinance. In that pursuit, we cannot sacrifice that purpose to a literal construction of any part of the ordinance. (*Cf. Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672].) ▮ Section 21.154, in that portion thereof which has been set forth herein, imposes the license tax "when such vehicle does not stand in or upon any public street, alley or other public place while awaiting employment." A later portion of that section relates to the amount of tax "[f]or each such vehicle standing in or upon any public street, alley or other public place while awaiting employment." The application of the section to a business, all of the operations of which are located in the city of

Los Angeles, is clear. But the mere incident that the appellants' buses are housed and their main place of business is located outside of the city does not require an exclusion from the effect of the ordinance of that portion of their business which consists of the operation of charter buses in the city of Los Angeles. ■ Moreover, it would not seem reasonable to give a narrow construction to the words "and such vehicle is routed under the direction of such passenger or passengers or of such persons hiring the same." Obviously, the purpose is to cover a situation where the person or group of persons chartering a bus designates the place or event to which they are to be driven as distinguished from a trip on a regularly established route of travel which has been predetermined by the operator of the transportation facilities. The ordinance does not require that the passengers designate the route in the sense of specifying particular streets or ways over which the trip should necessarily be made.

■ The more difficult question arises as to the basis upon which the amount of the assessment in this case was determined. The appellants argue that to require payment based upon the number of vehicles actually used as charter buses in any one quarter is, as to them, arbitrary and invalid. They state: "For example, in the 4th quarter of 1954, the defendants made a total number of 17 trips into the City of Los Angeles and used 14 different buses to make these trips. . . . The defendants could have made all of these trips during this quarter by using only one bus.[1] Had they done so, the tax due the City would have been a maximum of $36.00. The City contended, and the trial court ruled, that the defendants have to pay a full tax on each of the 14 vehicles, or a total of $504.00. And yet, the taxable event, insofar as the City of Los Angeles is concerned is identical, to-wit: the making of 17 bus trips into the City of Los Angeles during the quarter." Basically their argument is that the tax is based upon the number of vehicles used rather than the amount of business actually done as evidenced by the number of trips made. Reliance is placed upon *Security Truck Line v. City of Monterey,* 117 Cal.App.2d 441 [256 P.2d 366, 257 P.2d 755]. In that case, the city of Monterey, a chartered

---

[1]This, of course, would not be true if, on any particular occasion, more than one bus was necessary because of the number of persons to be transported. We quote from the brief to illustrate the nature of the appellants' contention.

city, by ordinance imposed upon the plaintiff a business license tax based upon the unladen weight of each of its trucks and of each truck of the subhaulers employed or used by plaintiff in the hauling of fish to canneries in Monterey. The plaintiff's principal place of business was in San Jose and the sole acts performed by it in Monterey consisted of the deliveries of such fish. The ordinance was solely a revenue measure. The other commitments of the plaintiff were such that it did not use over four of its own trucks at any one time in the hauling of the fish although it had 60 trucks. Its other commitments and the nature of the fish hauling business made it necessary to rotate the use of its trucks so that most of its trucks were used in the fish hauling at one time or another during a season. The uncertainty of the number of trucks needed at any one time made it necessary for the plaintiff to augment its own fleet of trucks by contracting with licensed subhaulers as independent contractors, many of whom hauled fish for the plaintiff occasionally and some only once a season. Under the ordinance as interpreted by the city, the plaintiff was required to pay a fee of $13.50 per vehicle in order to license each one of its fish hauling vehicles, even if a particular vehicle was used to transport but a single load into the city. While such fish hauling constituted only about 1 per cent of the plaintiff's total annual business, during the fish season it accounted for perhaps 20 per cent or more of its income. The court said, at pages 453-454: "In the present case, although the power to tax is clear, the method provided for the measurement of the tax, is, in our opinion, invalid for the reason that it measures the tax by factors not entirely based on the taxable event occurring in Monterey. The tax is therefore discriminatory and void. As already pointed out, an occasional delivery cannot be taxed. The tax is imposed upon each truck making a delivery or deliveries during the fish hauling season. If that truck makes one hundred deliveries during the season, the maximum tax is but $13.50 for that truck. But if the carrier uses one hundred different trucks to make the one hundred deliveries, it must pay $13.50 for each truck, or a total of $1,350. The taxable event is the doing of business in Monterey—the making of regular, continuous and planned deliveries during the season. The taxable event in both cases is the same—the delivery of one hundred loads of fish in Monterey—yet one company would pay one hundred times what the other had to pay. It seems clear that the measure of the tax set forth in the ordinance has no reason-

able connection with that taxable event. Keeping in mind that the city cannot tax an occasional delivery, and the nature of the business here involved, it seems quite clear to us that a tax based upon whether the carrier uses one truck to make one hundred deliveries or one hundred trucks to make such deliveries is based upon an arbitrary standard and a purely extraneous event. The record here shows that because of the nature of the fish hauling business, and because of the demands of its business outside of Monterey, plaintiff is forced to rotate its trucks so that in the course of a season it uses practically its entire fleet. The use of subhaulers made necessary because of the nature of the business, and for whose license fees plaintiff is responsible, aggravates this situation.

"None of the decided cases seems to have considered the factual and legal situation thus disclosed. The problem falls somewhere between the holding in *Ferran* v. *City of Palo Alto*, 50 Cal.App.2d 374 [122 P.2d 965], on one side, and *City of Los Angeles* v. *Tannahill*, 105 Cal.App.2d 541 [233 P.2d 671], and *California F. S. Co.* v. *Santa Monica*, 206 Cal. 714 [275 P. 948], on the other. An analysis of the factual situation involved, however, and considering the nature of the business taxed and the impact of the tax on it, leads to the conclusion that the method of measurement of the tax here involved most nearly resembles that held invalid in the Ferran case than it does the methods approved in the other cases. In the Ferran case the tax was measured by a purely extraneous event that had no relation to the quantum or nature of the business done in Palo Alto. That is equally true in the instant case. Here, the standard selected, the number of individual trucks making deliveries, rather than the number of such deliveries or the tonnage carried into the city is a purely accidental and extraneous event that has no relation to the taxable event occurring in Monterey or the quantum of business there carried on. For these reasons, it is our opinion that the measure provided in the taxing ordinance as amended is capricious, arbitrary and discriminatory. The injunction was, therefore, properly granted."

It is true that it was clear in the Monterey case that it was necessary to rotate the use of the trucks whereas such necessity was not so clearly shown in the present case. But the evidence did show that the charter service was in addition to the operation of a public transportation system on regular schedule and that the buses of the appellants were used interchangeably in its operations. The basic difficulty with the application of

section 21.154 to the operations of the appellants in the manner urged by the respondent is found in the method provided for the measurement of the tax. While that method would appear to be fair insofar as the operations of one who is engaged primarily in the business of furnishing charter bus service are concerned (*cf. City of Los Angeles* v. *Tannahill, supra,* 105 Cal.App.2d 541), it is invalid as applied to the operations of the appellants herein involved because, as in the Monterey case, it measures the tax by factors not entirely based on the scope of the business operations of the appellants in the city of Los Angeles. The number of buses used in a particular quarter is only an accidental factor and, therefore, as stated in the Monterey case, ''the measure of the tax set forth in the ordinance has no reasonable connection with . . . [the] taxable event'' or the quantum of business carried on in the municipality. As so applied to the appellants, the tax is discriminatory and void.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied June 27, 1960, and respondent's petition for a hearing by the Supreme Court was denied July 27, 1960.