[Civ. No. 19283. First Dist., Div. Two. Nov. 1, 1960.]

FREDERICK ARNKE, Appellant, v. CITY OF BERKELEY et al., Respondents.

Dinkelspiel & Dinkelspiel and Alan A. Dougherty for Appellant.

Robert T. Anderson, City Attorney, and Robert P. Berkman, Assistant City Attorney, for Respondents.

McGOLDRICK, J. pro tem.*—This is a proceeding for declaratory relief in which appellant prays for a judgment declaring that city of Berkeley Ordinance Number 2805-N.S., as amended, is void, unconstitutional and ineffective and that defendants be permanently restrained and enjoined from the enforcement of said ordinance against him.

The trial court adjudged said ordinance to be valid and constitutional in all respects as applied to appellant and subjected him to the payment of the business license tax provided therein. The appeal is taken from this decree.

*Assigned by Chairman of Judicial Council.

The facts are not in dispute. Appellant is an ornamental metals contractor, duly licensed as such under the laws of the State of California. He maintains his fixed place of business in the city and county of San Francisco. He is engaged in the prefabrication of materials outside the city of Berkeley, and the erection of such inside said city. The parties have stipulated that appellant does one-sixth of his total business within the city of Berkeley, that said amount of business is substantial, and that it requires two to four men working 40 days per year. In addition, he makes delivery of steel and prefabricated metal in the city of Berkeley from time to time.

Ordinance Number 2805-N.S. of the city of Berkeley entitled "LICENSING FOR PURPOSES OF REVENUE CERTAIN PROFESSIONS, BUSINESSES, TRADES AND OCCUPATIONS IN THE CITY OF BERKELEY" provides in pertinent part as follows:

"Section 1.1. This Ordinance is enacted solely to raise revenue for Municipal purposes, and is not intended for the purpose of regulation."

"Section 1.2-6. The average number of employees for any business not having a fixed place of business, in the City of Berkeley shall mean the number of persons employed daily in the applicant's business for the period during which such applicant conducts such business in the City of Berkeley, and shall de determined by ascertaining the total number of hours of service performed by all employees during the three (3) days, or less, on which the greatest number of persons are employed, and dividing the total number of hours of service thus obtained by the number of hours of service constituting a day's work, according to the custom or laws governing such employments, and by again dividing the sum thus obtained by the number of business days upon which the total hours of service is based. In computing the average number of employees, fractions of numbers shall be excluded."

"Section 2.1. There are hereby imposed upon all business in the City of Berkeley, license taxes in the amounts hereinafter in this Ordinance prescribed. It shall be unlawful for any person, either for himself or for any other person, to commence, transact or carry on any business in the City of Berkeley not excluded by this Ordinance, without first having procured a license from said City so to do, or without complying with any and all regulations contained in this Ordinance. The carrying on of any business without first having procured a license from said City so to do, or without complying with any and all regulations of this Ordinance, shall constitute a

separate violation of this Ordinance for each and every day that such business is so carried on.''

''Section 5.2. Every person engaged at other than a fixed place of business in the City of Berkeley in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically licensed by other provisions of this Ordinance, shall pay a semi-annual license tax based upon the average number of employees as defined in Section 1.2-6 of this Ordinance, and upon the annual rates provided for in Section 5.1 hereof. (*As amended by Ordinance No. 3654-N.S., in effect October 2, 1958.*)''

''Section 7.6. For the purpose of this Ordinance, any person shall be deemed to be in business and subject to the provisions of this Ordinance who does one act of selling, offering for sale, or taking an order for any goods, wares, merchandise, article, thing or service, or offering or soliciting for compensation the rental of any automobile for hire, of furnishing or offering to furnish for compensation bail to any person in any criminal proceeding, or of making a delivery.''

''Section 7.10. It shall be unlawful for any person to violate any provision or to fail to comply with any of the requirements of this Ordinance. Any person violating any provision of this Ordinance, or knowingly and intentionally misrepresenting to any officer or employee of this City in procuring a license, shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine not exceeding Five Hundred Dollars ($500) or by imprisonment not exceeding six (6) months, or by both such fine and imprisonment. Each such person shall be deemed guilty of a separate offense for each day during any portion of which any violation of any of the provisions of this Ordinance is committed, continued or permitted by such person and shall be punishable therefor as provided for in this Ordinance.''

''Section 8.1. If any section, sub-section, sentence, clause, phrase or portion of this Ordinance is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance. The Council of the City of Berkeley hereby declares that it would have adopted this Ordinance and each section, sub-section, sentence, clause, phrase or portion thereof, irrespective of the fact that any one or more sections, sub-sections, sentences,

clauses, phrases or portions be declared invalid or unconstitutional.''

Appellant contends that said ordinance, as amended, is invalid for the following reasons: (1) that it requires plaintiff first to pay a license fee before doing business with the city of Berkeley, which conflicts with and nullifies the permission given the contractor by general law to conduct his business at any place in the state; (2) that it attempts to impose upon appellant a tax upon his business which business is not located within the territorial limits of the city of Berkeley; (3) that it attempts to impose a motor vehicle license tax on the vehicles of the appellant which field is fully preempted by the general laws of the State of California; and (4) that it attempts to enforce its provisions by criminal process.

Appellant relies upon the cases of *Agnew* v. *City of Los Angeles,* 51 Cal.2d 1 [330 P.2d 385], *Agnew* v. *City of Culver City,* 51 Cal.2d 474 [334 P.2d 571], and *Agnew* v. *City of Culver City,* 147 Cal.App.2d 144 [304 P.2d 788], as standing for the proposition that city business taxes may not be enforced against persons licensed under state law by requiring them to secure business licenses or suffer criminal penalties. In the Agnew cases, it is revealed that the license fees were not imposed solely for revenue purposes but as an inseparable part of a regulatory scheme excluded by state law. [██ In the instant case, the city seeks to enforce its licensing ordinance against appellant for revenue only and the Agnew cases, *supra,* expressly recognize that such taxation is not excluded because the state has occupied the field of regulation.

Respondents and appellant rely upon the case of *Security Truck Line* v. *City of Monterey,* 117 Cal.App.2d 441 [256 P.2d 366, 257 P.2d 755]. Here, plaintiff was a highway carrier licensed by the Public Utilities Commission. During the winter fish packing season, it hauled fish by its own trucks and by subcontracts with subhaulers into the city of Monterey from outside the county. The city imposed upon plaintiff a business license tax based upon the weight of each of its trucks and upon each truck of the subhaulers employed by plaintiff in such hauling. The ordinance required that each of the licensee's vehicles display the license furnished for that purpose, and provided criminal sanctions for the violation of any of its provisions. The licensee's only activities in Monterey were the deliveries of such fish, it having no place of business nor agents and no terminus therein. An action was brought

against the city to have the ordinance declared unconstitutional and to have its enforcement enjoined. The court held that ". . . although the power to tax is clear, the method provided for the measurement of the tax, is . . . invalid for the reason that it measures the tax by factors not entirely based on the taxable event occurring in Monterey. . . ." The taxpayer was forced by circumstances to rotate its equipment so that in the course of a season, it used practically its entire 60-truck fleet in making such deliveries, although never over 4 at any one time. The court found the number of individual trucks making deliveries rather than the number of such deliveries or the tonnage carried into the city to be a "purely accidental and extraneous event."

It was alleged in the complaint that the fish hauled constituted but 1 percent of plaintiff's annual business, although its president testified that such might amount to 20 percent or more of its income during the fish season. The court, however, was not impressed by this argument and "entertained no doubt" that plaintiff's activities constituted the doing of business in Monterey, thus empowering it to impose a proper license tax on such activity.

The fact that the ordinance provision defining the doing of business as any fish delivery within Monterey was violative of the rule that a city cannot tax a carrier whose activities therein are only occasional and incidental to its main business which is located elsewhere, was not decisive where plaintiff was not one of the class discriminated against. Moreover, in the Security case as in the instant case, the plaintiff contended that its activities in the city were only occasional and incidental to its main business located elsewhere and that such did not amount to the doing of business therein.

Here, appellant stipulated that he does 16⅔ percent of his total business within the city of Berkeley. The measure of tax imposed is the average number of his employees who are actually engaged in the conduct of his business within the city. It readily appears that this measure is reasonable since it is based entirely upon the taxable event occurring in Berkeley.

While it is true that in determining whether a municipal ordinance is a revenue measure or is regulatory in its nature, the courts will look to the substantive provisions rather than to its title alone (*In re Johnson,* 47 Cal.App. 465 [190 P. 852]). There is no doubt that the city of Berkeley ordinance at least so far as it applies to appellant is of the former type.

Appellant also urges that inasmuch as he is required by the terms of the ordinance to affix a sticker to each of his business vehicles that it is regulatory in that regard and that since the state has fully preempted the field of regulating privately owned vehicles, the ordinance is, therefore, void.

Appellant cites the case of *Biber Elec. Co.* v. *City of San Carlos,* 181 Cal.App.2d 342 [5 Cal.Rptr. 261] in support of this proposition. The ordinances there in question required that every commercial vehicle driven on the city streets by any person or firm subject to business licensing should bear a certain emblem. Each licensee was entitled to one such emblem without fee but was charged $1.00 for every additional one required. The charge there imposed was not a business license fee, since by the very terms of the ordinance, the taxable transaction was the use of the city streets. The court stated: ". . . Granting the validity of the proposition that an exercise of police power in the regulation of a municipal affair will take precedence over a State statute [citation], the argument again fails because the . . . fee charged is not a business license but a license upon vehicles using city streets, matters which are clearly governed by sections 9250 et seq. of the 1959 Vehicle Code. . . ." This case does not support appellant's position. ▮ The fact that the Berkeley ordinance requires a sticker type of receipt or identifying emblem to be displayed on the licensee's vehicles as an aid to its enforcement does not alter the nature of the tax any more than a similar provision did in *Security Truck Line* v. *City of Monterey, supra.*

Respondents cite the case of *West Coast Advertising Co.* v. *San Francisco,* 14 Cal.2d 516 [95 P.2d 138], as standing for the proposition that the levy of taxes including license taxes by a city for revenue purposes is a municipal affair and that a city may legally impose and collect license taxes for revenue purposes. Other cases standing for this fundamental rule are *City of Los Angeles* v. *Tannahill,* 105 Cal.App.2d 541 [233 P.2d 671], and *City of Los Angeles* v. *Belridge Oil Co.,* 42 Cal.2d 823 [271 P.2d 5].

Respondents urge that the recent case of *In re Groves,* 54 Cal.2d 154 [4 Cal.Rptr. 844, 351 P.2d 1028], is a complete answer to appellant's contention that state-licensed contractors are not subject to local business license tax ordinances because the field is preempted. In *Groves, supra,* section 2111, division 2, of the Palm Springs Ordinance Code provided that: " 'It is unlawful for any person (whether as owner, manager, principal, agent, clerk, employee, officer or lessee, either for

himself or for any other person, or for any body corporate, or as an officer of any corporation, or otherwise) to commence, manage, engage in, conduct or carry on any business, vocation, profession, calling, show, exhibition or game, in Chapters 21 and 22 specified, in this City, without first having procured a license from the City of Palm Springs to do so or without first complying with any and all regulations for such business, vocation, profession, calling, show, exhibition or game contained in Chapters 21 and 22.' ''

Petitioner was licensed by the state to operate a milk products plant and was convicted of violation of section 2111, *supra,* for engaging in business in Palm Springs without a license. He petitioned for a writ of habeas corpus challenging his conviction and contending that the state statutes established a complete system for the licensing and regulation of his business and that the city cannot, therefore, require him to secure an additional license to conduct that business. The Supreme Court stated: ''Whether or not state law has occupied the field of regulation, cities may tax businesses carried on within their boundaries and enforce such taxes by requiring business licenses for revenue and by criminal penalties. . . .'' This case is also a complete answer to appellant's contention that the Berkeley ordinance is invalid because it prescribes fines, forfeitures and penalties for the violation of the provisions thereof.

Appellant fails to distinguish between the kinds of ordinances which were under consideration in the Agnew cases from the one under consideration here. In the Agnew cases, the ordinances were regulatory in nature and the Berkeley ordinance is one purely for revenue purposes. Appellant also contends that Ordinance Number 2805-N.S. requires that he must first obtain a license before he can commence any act that is incidental to his business such as the making of a single delivery and that the doing of a single act as the making of a delivery does not constitute doing business. While it is true that section 7.6 of Ordinance Number 2805-N.S. provides that any person shall be deemed to be in business who does one act, appellant, however, is not a party aggrieved by any possible application of this section, and, therefore, cannot complain of a possible illegal application of said section. As was pointed out previously, he stipulated, which formed the basis of a finding of fact, that one-sixth of the total business was done by him within the city of Berkeley. Moreover, even if this provision is illegal or invalid, it does

not affect the validity of the remaining portions of the ordinance since section 8.1 provides:

"If any section, sub-section, sentence, clause, phrase or portion of this Ordinance is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Ordinance. The Council of the City of Berkeley hereby declares that it would have adopted this Ordinance and each section, sub-section, sentence, clause, phrase or portion thereof, irrespective of the fact that any one or more sections, sub-sections, sentences, clauses, phrases or portions be declared invalid or unconstitutional."

To finalize appellant's legal aspect of this ordinance and in the oral argument, he directed our attention to the case of *City of Texarkana* v. *Taylor*, 185 Ark. 1145 [51 S.W.2d 856] as being an analogous case and determinative of the issue of validity concerning the Berkeley ordinance. Here, the evidence showed that a Texas attorney's practice in Texarkana, Arkansas, was merely incident to Texas practice, preventing the Arkansas city from requiring payment of occupation taxes. The facts disclose that such attorney was a resident of Texarkana, Texas, and maintained his office there; that he did not maintain an office in Texarkana, Arkansas; that during that year, he appeared in the municipal court of the Arkansas city as attorney for various parties at least 25 times; that he had one client whose office was in the Arkansas city; and that he consulted with him as an attorney in the client's office. The court held that the power to impose an occupation tax on attorneys vested in the city by section 7618 of Crawford & Moses' Digest did not include the power to tax an attorney who neither resides in nor has an office or place of business in the city and who only appears in court and advises his clients in said city. This decision is not at variance with the law of California nor do we find it analogous to the ordinance in question.

For the reasons herein stated, the judgment of the trial court is affirmed.

Draper, Acting P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied December 1, 1960, and appellant's petition for a hearing by the Supreme Court was denied December 28, 1960. Schauer, J., McComb, J., and White, J., were of the opinion that the petition should be granted.