[Civ. No. 25030.   Second Dist., Div. One.   Sept. 21, 1961.]

THE CITY OF LOS ANGELES, Appellant, v. PETE DRAKE, Respondent.

Roger Arnebergh, City Attorney, Bourke Jones and James A. Doherty, Assistant City Attorneys, and Robert C. Summers, Deputy City Attorney, for Appellant.

Pray, Price & Williams and William C. Price for Respondent.

McCutchen, Doyle, Brown & Enersen, McCutchen, Black, Harnagel & Shea, Gerald H. Trautman, G. William Shea, Frederic A. Sawyer and John Munholland as Amici Curiae on behalf of Respondent.

WOOD, P. J.—This is an action to recover municipal license taxes for engaging in the business of transporting passengers by bus. The court found that the section of the Los Angeles Municipal Code under which the taxes were assessed (§ 21.154) is unconstitutional in that the classification contained therein is unreasonable and discriminatory. Plaintiff appeals from the judgment which was in favor of defendant. Appellant contends that the classification is reasonable and is not discriminatory.

The portion of section 21.154 of the Los Angeles Municipal Code under which the taxes were assessed provided as follows:

"For every person engaged in the business of running, driving or operating any automobile or motor-propelled vehicle for the transportation of passengers for hire, when driven by the owner or a representative of the owner at rates per mile, per trip, per hour, per day, per week or per month, and such vehicle is routed under the direction of such passenger or passengers or of such persons hiring the same, and when such vehicle does not stand in or upon any public street, alley or other public place while waiting employment, for each vehicle having a seating capacity of five to seven persons, inclusive, $7.50 per quarter; . . .

"For each such vehicle having a seating capacity of more than 20 persons, $36.00 per quarter. . . .

"In determining the seating capacity of any such vehicle the driver and conductor shall be included."

At all times herein mentioned, defendant has operated a transportation business under the fictitious name, Terminal Island Transit Company. He operates a bus line as a common carrier between downtown Long Beach and Terminal Island in Los Angeles, and he has a certificate of convenience and necessity therefor from the Public Utilities Commission of the state. He also has a license therefor from the city of Long Beach, and a franchise therefor from the Public Utilities and Transportation Department of the City of Los Angeles.

Defendant also operates a business of transporting a group of persons from Long Beach to other places by bus, and in transporting those persons on return of the bus to Long Beach. Those trips are sponsored by an organization, and the defendant receives a stipulated amount from the organization for each round trip. That business will be hereinafter referred to as the charter bus business. Defendant has a license from the city of Long Beach to operate the charter bus business in and from that city.

The usual mode of operating the charter bus business is as follows: Practically all requests for charter bus service are received at the home of the defendant in Long Beach. The chartered bus takes passengers from Long Beach to the place designated by the passengers, the bus remains at that place until the event which the passengers came to attend is over, and then the bus returns the passengers to Long Beach. Every person who leaves Long Beach with a group on a chartered bus returns to Long Beach with the same group. The only passengers are those who board the bus in Long Beach.

Defendant uses 14 buses in the two businesses. Some of them are used in operating the charter business when they are not required in the operation of the bus line. The buses are serviced and stored on Terminal Island (in Los Angeles).

As found by the trial court, the total annual revenue of defendant from the operations of both businesses was $280,000, of which amount $5,000 was revenue from the charter bus business; and the total mileage of both businesses was 450,000 miles, of which 6,500 to 7,000 miles were in charter bus business.

Between September 1, 1953, and July 1, 1956, defendant operated buses, chartered and operated as above described, from Long Beach to various places in the city of Los Angeles. Those places were such as the Los Angeles Coliseum (sporting events), Wrigley Field (baseball games), and Hollywood Bowl (musical programs). Over one-half of the trips were to the Coliseum.

On July 10, 1956, the City Clerk of the City of Los Angeles levied an assessment against defendant for license fees claimed to be due under section 21.154 of the Los Angeles Municipal Code.

On September 10, 1956, at the request of defendant, a hearing on the assessment was held by the board of review of the city. At that hearing defendant presented a list of the trips made by his buses, in connection with his charter bus business,

into Los Angeles between September 1, 1953, and July 1, 1956. That list set forth the dates of the trips, the numbers of buses used, the prices charged, the places in Los Angeles to which passengers were taken (and from which they were returned to Long Beach), and the names of the organizations which chartered the buses. The total number of such trips, as shown on the list, was 70. The findings of the board of review, after the hearing, included an analysis of 67 trips into Los Angeles and a ''determination'' of the liability of defendant for license fees therefor under section 21.154 of the Los Angeles Municipal Code. (The board apparently determined that there were no taxes due by reason of 3 of the 70 trips referred to on the list submitted by defendant.) That analysis and determination was as follows:

| Period | No. Trips | No. Vehicles | Principal Amount |
|--------|-----------|--------------|------------------|
| 3 Q 53 | 3 | 3 | $ 108.00 |
| 4 Q 53 | 6 | 1 | 36.00 |
| 1 Q 54 | 4 | 2 | 72.00 |
| 2 Q 54 | 11 | 6 | 216.00 |
| 3 Q 54 | 2 | 2 | 72.00 |
| 4 Q 54 | 6 | 2 | 72.00 |
| 1 Q 55 | 2 | 2 | 72.00 |
| 2 Q 55 | 4 | 3 | 108.00 |
| 3 Q 55 | 4 | 2 | 72.00 |
| 4 Q 55 | 14 | 6 | 216.00 |
| 1 Q 56 | 6 | 3 | 108.00 |
| 2 Q 56 | 5 | 4 | 144.00 |
| 3 Q 56 | — | — | — |
| | | | $1,296.00 |

The board of review determined that the total amount payable by defendant was $1,296 principal, $147.96 interest, $259.20 penalty, $1,703.16 total.

In *City of Los Angeles* v. *Carson,* 181 Cal.App.2d 540 [5 Cal.Rptr. 356] the city sought to recover license fees from the defendants under section 21.154 of the Los Angeles Municipal Code. (The same section under which it seeks to recover herein.) In that case the defendants operated a bus line and they also operated a charter bus business. Their place of business was in Lynwood and they did not have a place of business in the city of Los Angeles. The equipment used in the operation of the bus line was also used in the operation of the charter bus business. During the years 1953 and 1954, defendants

made 358 charter bus trips into Los Angeles from Inglewood and, in making those trips, used from 10 to 19 buses. The city contended that the defendants were required to pay a full tax (of $36 a quarter) on each of 14 buses. In reversing a judgment for plaintiff therein, it was said, at page 543: "The evidence was sufficient to establish that the defendants were engaged in the city of Los Angeles in the business described in section 21.154 of the Municipal Code." It was further said therein, at pages 547 and 548: "The basic difficulty with the application of section 21.154 to the operations of appellants in the manner urged by the respondent is found in the method provided for the measurement of the tax. While that method would appear to be fair insofar as the operations of one who is engaged primarily in the business of furnishing charter bus service are concerned . . . it is invalid as applied to the operations of the appellants herein because as in the *Monterey* case,[1] it measures the tax by factors not entirely based on the scope of the business operations of the appellants in the city of Los Angeles. The number of buses used in a particular quarter is only an accidental factor and, therefore, as stated in the *Monterey* case, 'the measure of the tax set forth in the ordinance has no reasonable connection with . . . [the] taxable event' or the quantum of business carried on in the municipality. As so applied to the appellants, the tax is discriminatory and void."

In *Security Truck Line* v. *City of Monterey*, 117 Cal.App. 2d 441 [256 P.2d 366, 257 P.2d 755], plaintiff, a licensed highway carrier, sought a judgment declaring a licensing ordinance of the city unconstitutional. The ordinance, and an amendment thereto specifically covering seasonal fish haulers, imposed upon plaintiff a business license tax based on the weight of each truck used in hauling fish into Monterey for plaintiff. In affirming a judgment in favor of plaintiff therein it was said, at pages 453 and 454: "[A]lthough the power to tax is clear, the method provided for the measurement of the tax, is, in our opinion, invalid for the reason that it measures the tax by factors not entirely based on the taxable event occurring in Monterey. The tax is therefore discriminatory and void. As already pointed out, an occasional delivery cannot be taxed. The tax is imposed upon each truck making a delivery or deliveries during the fish hauling season. If that truck makes one hundred deliveries during the season,

[1] *Security Truck Line* v. *City of Monterey*, 117 Cal.App.2d 441 [256 P.2d 366, 257 P.2d 755].

the maximum tax is but $13.50 for that truck. But if the carrier uses one hundred different trucks to make the one hundred deliveries, it must pay $13.50 for each truck, or a total of $1,350. The taxable event is the doing of business in Monterey—the making of regular, continuous and planned deliveries during the season. The taxable event in both cases is the same—the delivery of one hundred loads of fish in Monterey—yet one company would pay one hundred times what the other had to pay. It seems clear that the measure of the tax set forth in the ordinance has no reasonable connection with that taxable event. Keeping in mind that the city cannot tax an occasional delivery, and the nature of the business here involved, it seems quite clear to us that a tax based upon whether the carrier uses one truck to make one hundred deliveries or one hundred trucks to make such deliveries is based upon an arbitrary standard and a purely extraneous event. The record here shows that because of the nature of the fish hauling business, and because of the demands of its business outside of Monterey, plaintiff is forced to rotate its trucks so that in the course of a season it uses practically its entire fleet. The use of subhaulers made necessary because of the nature of the business, and for whose license fees plaintiff is rsponsible, aggravates this situation. . . . Here, the standard selected, the number of individual trucks making deliveries, rather than the number of such deliveries or the tonnage carried into the city is a purely accidental and extraneous event that has no relation to the taxable event occurring in Monterey or the quantum of business there carried on. For these reasons, it is our opinion that the measure provided in the taxing ordinance as amended is capricious, arbitrary and discriminatory.''

The factual situation in the present case is similar to the factual situation in the case of *City of Los Angeles* v. *Carson, supra.* In both cases defendants are engaged in the operation of bus lines, and they also engaged in the operation of charter bus businesses in and from a city outside the city of Los Angeles. In both cases the buses used in the operation of the bus lines are also used in the operation of the charter bus businesses. The taxable event in both cases, with respect to the city, is the same—the doing of business in the city of Los Angeles. The standard of measurement selected by the city in both cases is the same—the number of individual buses carrying passengers into the city. In the present case,

as in the *Carson* case, " 'the measure of the tax set forth in the ordinance has no reasonable connection with . . . [the] taxable event' or the quantum of business carried on in the municipality." Section 21.154 of the Los Angeles Municipal Code, as applied to defendant, is discriminatory and void.

Appellant contends that if section 21.154 is unconstitutional as to defendant, his business activities (as referred to above) are taxable under section 21.190 of the Los Angeles Municipal Code, and that therefore judgment should be in favor of the city for the amount of taxes as computed under the section last mentioned.

Section 21.190, subdivision (a), of the Los Angeles Municipal Code provides for a license tax on persons "not specifically licensed by other provisions of this article [Article 1— License and Sales Taxes]." Section 21.190, subdivision (b) provides for a license tax on persons engaged in more than one type of business. Section 21.190, subdivision (d) provides for a method of measuring the tax when "gross receipts" are derived from sources both within and without the city. Appellant does not state under which subdivision defendant should be taxed. Furthermore, it appears from the complaint that the taxes which the city sought to recover were assessed under section 21.154 of the code and that the action was to recover the amount of taxes which were assessed under that section. It further appears from the transcript that the action was tried on the theory that recovery was sought under section 21.154. Under the circumstances, the question as to whether defendant's activities are taxable under section 21.190 is not properly before this court.

The judgment is affirmed.

Lillie, J., concurred.

A petition for a rehearing was denied October 16, 1961, and appellant's petition for a hearing by the Supreme Court was denied November 15, 1961.