[Civ. No. 56100. Second Dist., Div. Two. Oct. 18, 1979.]

CITY OF LOS ANGELES, Plaintiff and Appellant, v.
LONDON TOWNE LIVERY SERVICE, LTD., Defendant and
Respondent.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## COUNSEL

Burt Pines, City Attorney, Thomas C. Bonaventura, Assistant City Attorney, and Ronald A. Tuller, Deputy City Attorney, for Plaintiff and Appellant.

Duwain H. Herring for Defendant and Respondent.

## OPINION

**COMPTON, J.**—In an action by the City of Los Angeles (City) to collect unpaid business taxes from London Towne Livery Service, Ltd. (London) the superior court entered summary judgment in favor of London on the basis that City's ordinance is unconstitutional. The City has appealed. We reverse.

London, who maintains offices in Beverly Hills and Newport Beach, operates a charter transportation service throughout the Counties of Los Angeles and Orange. Admittedly it conducts a portion of its business in the City of Los Angeles where it frequently picks up and discharges passengers.

The City's Municipal Code section 21.194, insofar as it is relevant here, imposes a tax on persons engaged in the business of transporting of passengers for hire at the rate of 90 cents per day for each vehicle used. The tax is levied where the transporting occurs either entirely within the City or on trips originating or terminating within the City. Thus the tax applies with equal force to intracity as well as intercity operators.

▮ The levy of taxes is a municipal affair, and a city may properly impose and collect license taxes for revenue purposes. (*Arnke* v. *City of Berkeley*, 185 Cal.App.2d 842 [8 Cal.Rptr. 645].) There is no constitution-

al prohibition against local taxes upon businesses doing business both within and outside the taxing jurisdiction. ". . . as long as such taxes are apportioned in a manner by which the measure of tax fairly reflects that proportion of the taxed activity which is actually carried on within the taxing jurisdiction, no constitutional objection appears." (*City of Los Angeles* v. *Shell Oil Co.*, 4 Cal.3d 108, at p. 124 [93 Cal.Rptr. 1, 480 P.2d 953].)

London is in fact "doing business" in the City. Its vehicles do not merely pass through the City but instead pick up and deposit passengers within the City. The City taxes only those London vehicles used on trips which originate or terminate within the City.

This situation is analogous to that in *Security Truck Line* v. *City of Monterey*, 117 Cal.App.2d 441 [256 P.2d 366, 257 P.2d 755]. There the City of Monterey imposed a tax on trucks used to haul fish from outside the city to canneries located in the city. The court held that Security Truck was doing business in Monterey because the City was a terminus for such hauls. "[S]uch activities constitute the doing of business in Monterey, a taxable event occurred there, and that city is empowered to tax such event by a proper nondiscriminatory ordinance." (*Security*, at p. 452.)

London contends, and the superior court agreed, that the City's tax is measured in a constitutionally defective manner which results in extraterritorial application and discriminates against intercity operators. We disagree.

■ True, a city cannot base its tax on an extraterritorial event; the taxable event must occur in the taxing city, (*Security Truck Line* v. *City of Monterey, supra*) and "[N]o measure of apportionment can satisfy the constitutional standard if the measure of tax is made to depend upon a factor which bears no fair relationship to the proportion of the taxed activity actually taking place within the taxing jurisdiction." (*City of Los Angeles* v. *Shell Oil Co., supra*, at p. 124.) However, a city has broad discretion in determining the base for its tax and "[w]hen classifications provided by a license tax ordinance are attacked on constitutional grounds, every intendment and presumption is in favor of upholding them." (*Web Service Co.* v. *Spencer*, 252 Cal.App.2d 827, at p. 837 [61 Cal.Rptr. 493].)

 The tax in question does not provide unlawful extraterritorial taxation. This tax is designed to operate only when an operator is actually engaged in business within the City. The events that trigger the tax are the transportation of persons by an operator: (1) wholly within the City, (2) from a place outside the City to a place within the City, (3) from a place within the City to a place outside the City, and (4) from a place within the City to a place also within the City, where the trip includes going outside the City. (L.A. Mun. Code, § 21.194.)

London's argument that the tax discriminates in favor of intracity operators is but another way of stating the contention of extraterritorial application. That argument is simply that the method of taxation, i.e., a flat fee per vehicle per day adopted by the City is not a reasonable measure of the amount of business done in the City. In this contention London relies on *Security Truck Line* v. *City of Monterey, supra,* and *City of Los Angeles* v. *Carson,* 181 Cal.App.2d 540 [5 Cal.Rptr. 356].

*Carson* relied almost entirely on *Security* in invalidating a city tax similar to the one now before us. There the tax was levied at a per vehicle, *per quarter year* rate on persons engaged in transporting passengers for hire.

Carson, the taxpayer in that case, operated a scheduled bus service over fixed routes in cities other than Los Angeles. In addition, Carson used the same buses for occasional charter service which picked up and deposited passengers in the City of Los Angeles.

The court in *Carson* observed that the evidence disclosed the number of trips subject to the Los Angeles city tax during a selected quarterly period was such that they could have been accomplished by the use of a single bus, even though Carson had used several different buses, thereby increasing its tax liability several fold.

The holding in *Carson* was that under the circumstances and evidence in that case the tax was not a reasonable measure of the business transacted in Los Angeles. The court did observe, at page 548, however, that the tax did appear "to be fair insofar as the operations of one who is engaged *primarily* in the business of furnishing charter bus service are concerned (cf. *City of Los Angeles* v. *Tannahill,* 105 Cal.App.2d 541 [233 P.2d 671]). . . ." (Italics added.)

*Security Truck Line* v. *City of Monterey, supra,* 117 Cal.App.2d 441, was comparable to *City of Los Angeles* v. *Carson, supra,* in at least two respects. *Security* operated a large fleet of trucks in various hauling operations. Only a small portion of its business included hauling fish to the Monterey canneries. Thus, like the buses in *Carson,* the trucks were rotated to conduct what might be described as the incidental business which the City of Monterey sought to tax. Monterey's city tax was calculated on an *annual* basis.

In contrast to *Security* and *Carson,* we are here dealing with a tax calculated on a *daily* basis and an operator which is *primarily* in the charter transportation business. Hence, we do not have the factor of rotating equipment from a larger fleet over an extended period of time to accommodate an incidental portion of the operator's business.

London has presented no evidence covering the number of trips it makes during a day nor the number of passengers carried. The amount of tax claimed by the City to be due—$19,727.25 for a three-year period—suggests that, at 90 cents per day per vehicle, the number of vehicles and the number of trips was quite large.

"[A]n attack upon a tax classification based upon a claim that equal protection has been violated is a most difficult enterprise." (*Kay* v. *Pacific Tel. & Tel. Co.,* 83 Cal.App.3d 814, at p. 817 [148 Cal.Rptr. 213].) ▮ ▮ The ordinance carries a presumption of constitutionality which can be overcome only by strong evidence that the classification oppressively discriminates against a particular person or group. The burden of such a showing rests upon the party challenging the classification.

London's argument, that the tax, in order to be valid, must be based on apportioned gross receipts, was rejected by our Supreme Court in *Willingham Bus Lines, Inc.* v. *Municipal Court,* 66 Cal.2d 893 [59 Cal.Rptr. 618, 428 P.2d 602]. The court observed at page 897 that "[t]he plaintiff has not attempted to establish that these disparate formulae for taxation work a concrete hardship upon charter bus lines; the equal protection argument must therefore stand or fall with the novel proposition that a municipality is powerless to employ more than one method of computing taxes for various businesses unless it can demonstrate some compelling justification for doing so."

The court's observation in *Willingham* is equally applicable here. London has not demonstrated how section 21.194 discriminates against intercity carriers. The cases relied on by London which declared tax ordinances unconstitutional contained evidence, provided by the taxpayer, that the tax involved was discriminatory. (*Security Truck Line* v. *City of Monterey, supra; City of Los Angeles* v. *Carson, supra.*)

■ Los Angeles Municipal Code section 21.194 on its face appears constitutional. It taxes business conducted within the City and does not purport to tax extraterritorial activity. Further, it appears to us that the number of vehicles used per day, as distinguished from the number used in a quarter or a year, is a reasonable method of calculating the amount of business conducted in the City. It seems unlikely that on a daily basis the same number of passengers could be transported with fewer vehicles, as was the case in *Security* and *Carson, at least London has presented no evidence to that effect.* Thus we feel constrained to give the ordinance the benefit of the presumption of constitutionality.

Finally London argues that the tax in question must give way to the state's preemption of the field. Charter carriers are regulated and taxed by the state as are, for that matter, all motor vehicles. ■ A City may not impose additional taxes on the use of streets and highways which pass through it. (*Biber Elec. Co.* v. *City of San Carlos,* 181 Cal.App.2d 342 [5 Cal.Rptr. 261].) On the other hand, as we have stated, a city may tax the "doing of business" within its boundaries.

We recognize the problem faced by operators such as London who do business in California, especially Los Angeles County, where there are some 80 incorporated cities interspersed with large areas of unincorporated county territory.

However, as was stated in *Security Truck Line* v. *City of Monterey, supra,* at page 453: "So far, the state has not seen fit, by constitutional provision or otherwise, to limit or to regulate the power of the cities where carriers do business to tax. Until that is done, the courts, under the guise of interpretation, should not attempt to create exemptions to the present constitutional provisions."

Since the declaration offered by London in support of the summary judgment contained nothing which would compel a holding that the tax in question is unconstitutional, the superior court's decision to grant

summary judgment was necessarily based on a determination that the ordinance creating the tax was unconstitutional *on its face.*

In view of our holding that the ordinance appears to us to be facially constitutional, the judgment is reversed.

Roth, P. J., and Beach, J., concurred.